### In re G. V. and R. P.

[394 A.2d 1126]

No. 157-77

Present: Barney, C.J., Daley, Larrow, Billings and Hill, JJ.

Opinion Filed October 30, 1978

500

*M. Jerome Diamond*, Attorney General, and *Richard A. Unger*, Assistant Attorney General, Montpelier, for Plaintiff.

*DeBonis and Wright*, Poultney, and *Potter Stewart, Jr.*, of *Kristensen, Cummings and Price*, Brattleboro, for Parents.

*French & Zwicker*, Brattleboro, for Juveniles.

**Daley, J.** This is an appeal by the parents from an order of the district court terminating the residual parental rights to G. V. and R. P.

In August, 1975, the state's attorney filed a petition with the district court alleging that G. V. and R. P. were in need of care or supervision in that they were "without proper parental care or supervision, or other care necessary for their well-being." 33 V.S.A. §§ 632(a)(12)(B), 645. In October, 1975, the parents admitted the allegations, and the court transferred the children's legal custody to the Commissioner of Social and Rehabilitation Services. 33 V.S.A. § 656(a)(3). A hearing was held on June 15, 1976, at the request of counsel for the children. At this hearing the state's attorney requested termination of residual parental rights. The court issued an order on June 25, 1976, which placed G. V. back in his parents' home, but which continued both children's custody with the Commissioner. In November, 1976, the deputy state's attorney filed a petition seeking modification of the court's order by transferal of residual parental rights to the Commissioner. 33 V.S.A. § 659(a). Hearings were conducted in January and February, 1977, and the court, after making findings of fact and conclusions of law, ordered that the residual parental rights to G. V. and R. P. be transferred to the Commissioner of Social and Rehabilitation Services.

 On appeal, appellants assert several claims of error. They first contend that the termination proceedings below are void due to the failure of the deputy state's attorney to file her appointment and oath with the county clerk as required by 24 V.S.A. § 363. Under the *de facto* officer doctrine, long recognized by this Court, an officer coming into possession of his office under the forms of law and assuming to act under a proper commission is a *de facto* officer whose acts are binding as to third persons, despite some infirmity in the qualifications

of the officer. *State* v. *Levy*, 113 Vt. 374, 34 A.2d 370 (1943); *Fancher* v. *Stearns*, 61 Vt. 616, 18 A. 455 (1889). A *de facto* officer cannot, of course, justify his acts as such in any suit to which he is a party. *State* v. *Levy, supra*, 113 Vt. at 378, 34 A.2d at 372. The deputy state's attorney here was not a "party" in the proceedings to terminate parental rights. Since the deputy state's attorney was a *de facto* officer and was not a party to the proceedings, the modification petition she signed was sufficient to confer jurisdiction upon the lower court. See *Petition of Dusablon*, 126 Vt. 362, 365, 230 A.2d 797, 800 (1967).

■ Appellants next contend that the lower court failed to adhere to the standards delineated in 33 V.S.A. § 667 for determination of the best interests of the children. The findings of fact made by the lower court, it is true, do not specifically set forth the four criteria of § 667. It is not necessary, however, that the court couch its findings in the precise language of § 667, as long as it is evident that the court fully considered the four criteria set forth therein. Our review of the lower court's findings convinces us that the court fully considered those criteria.

■ Appellants also assert that the State did not meet its burden under 33 V.S.A. § 659(a) of showing "changed circumstances." In order to modify an existing order of the juvenile court, the petitioner must establish that there has been a substantial change in material circumstances and that the modification sought will be in the best interests of the child. 33 V.S.A. § 659(a); *In re J. & J. W.*, 134 Vt. 480, 483, 365 A.2d 521, 523 (1976). In *In re J. & J. W., supra*, 134 Vt. at 484, 365 A.2d at 524, we stated the showing necessary for a finding of changed circumstances in termination cases:

> To establish a substantial change in material circumstances, petitions to modify an order and terminate parental rights proceed on the theory that natural parents have an obligation to correct their living circumstances for the better . . . and that there has been a deterioration or that there exists stagnation coupled with a prospective inability for improvement.

■ We do not agree with the appellants that the *only* relevant time period in this case for determining whether a change of circumstances exists is from the date of the court's previous order, *viz.*, June 25, 1976. The doctrine of res judicata, of course, barred the court from using changes (or stagnation) occurring prior to the June 25 order as the sole basis for its finding of changed circumstances; it was necessary for the court to find additional changes or stagnation since its previous order. The court could, however, use the time period prior to the June 25 order in conjunction with the time period after the June 25 order to determine whether there was the requisite change of circumstances since the original disposition order.

■■ In our review of causes in which termination of residual parental rights has been sought, whether in original proceedings or in modification proceedings, we have proceeded with great caution, and continue to do so in light of the awesome power involved and the concern expressed by the Legislature in the preservation of the family unit. See, e.g., *In re D. R.*, 136 Vt. 478, 392 A.2d 951 (1978); *In re N. H.*, 135 Vt. 230, 373 A.2d 851 (1977); *In re J. & J. W., supra*. With this in mind, we are of the view that the lower court was justified in finding changed circumstances and in terminating the residual parental rights to G. V. and R. P. The evidence establishes a pattern of such severe and constant family instability that it can be said to come within the ambit of "stagnation coupled with a prospective inability for improvement." *In re J. & J. W., supra*, 134 Vt. at 484, 365 A.2d at 524; *In re Petition of Certain Neglected Children*, 134 Vt. 74, 77, 349 A.2d 228, 230 (1975).

The juvenile court's findings of fact and our review of the record discloses the following. G. V. and R. P. are the eldest in a family of five children whose ages range from eight weeks to seven years. As of January, 1977, the father was unemployed and had applied for New York A.F.D.C. During the some seventeen months in which G. V. and R. P. were in the custody of the Commissioner, the parents were unwilling to provide for G. V.'s and R. P.'s basic needs. There was no stability or tranquility in the home: from the June 25, 1976, order to the termination hearings, the parents separated and

"reconciled" four times, the family moved twice, and the parents cut off their only source of income (Vermont A.F. D.C.) in hope of acquiring New York A.F.D.C. Many agencies attempted to help the parents, but with no success. The parents were unwilling to make changes in their destructive marital relationship, no improvement in that relationship was made, and there is no hope that they will deal with their marital problem. The marital relationship was particularly destructive to the children as they were used frequently by one parent against the other.

The juvenile court's findings do not address numerous circumstances disclosed by the record that evince the parents' inability to maintain even a minimum level of care, supervision and stability for G. V. and R. P. Those circumstances, in short, reveal a continuous pattern, both before and after the June 25 order, of family crises involving housing, health of the children (both physical and emotional), unsanitary living conditions, marital rift, family feuding, the police, and child welfare agencies. No progress has been made in the parents' ability to create a stable home environment, and prospect for change for the better is so dim that it can be termed hopeless. See *In re J. & J. W.*, *supra*, 134 Vt. at 485–86, 365 A.2d at 525 (Larrow, J., concurring). In the approximately seventeen months in which the children were in the custody of the Commissioner of Social and Rehabilitation Services, concern for their welfare was not demonstrated, and the evidence supports an inference that it will not occur in the future. The juvenile court was fully warranted in concluding that there had been "changed circumstances" and that the best interests of G. V. and R. P. would be served by transfer of residual parental rights to the Commissioner.

*Judgment affirmed.*