423 A.2d 1197 (1980)
In re E. G.
No. 6-80.
Supreme Court of Vermont.
November 5, 1980.
M. Jerome Diamond, Atty. Gen., Susan R. Harritt, Asst. Atty. Gen. and Elizabeth Grant Rome, Sp. Asst. Atty. Gen., Montpelier, for petitioner.
Stephen J. Murphy, Montpelier, for respondent.
Before DALEY, LARROW, BILLINGS and HILL, JJ., and SMITH, J. (Ret.), Specially Assigned.
LARROW, Justice.
We are again presented with the question of whether the district court, in a juvenile proceeding under 33 V.S.A. chapter 12, was justified in terminating parental rights of the mother of E. G., a minor some three years of age at the time of the modification hearing which resulted in the order. The factual situation is complicated by provisions of the same order returning custody of N. G., a sister some six years older, to the mother, with protective services to be provided by the Department of Social and Rehabilitation Services.
No question is raised here or below about the validity of the original order entrusting custody of both children to the Commissioner of Social and Rehabilitation Services, in February, 1978, or to the continuance of that order at the review hearing in August, 1978. Truly dire circumstances made these steps requisite, and they were taken virtually by stipulation. But in September, 1979, the mother filed a petition seeking return of custody, and the State's Attorney filed a petition seeking the relief which the court eventually afforded.
*1198 Appellant mother (the only present parent) raises two general questions on appeal. The first is a claimed lack of justification for the trial court's finding of "stagnation" with respect to the mother's ability to care for the minor, within the connotations of In re Petition of Certain Neglected Children, 134 Vt. 74, 349 A.2d 228 (1975), enlarged upon in In re J. & J. W., 134 Vt. 480, 365 A.2d 521 (1976), and further explained in In re D. R., 136 Vt. 478, 392 A.2d 951 (1978). The second questions the basis for reception and use of the testimony of a child psychiatrist, one Dr. Rife.
The factual pattern here in issue is varied and complex. Its cause has root in the unchallenged diagnosis of the mother as a person suffering from chronic schizophrenia, characterized by exacerbations and remissions. During the periods of exacerbation, often a result of stress, the mother has demonstrated inability to provide proper child care. In the past, this inability has manifested itself in delusional behavior, lack of heat and cleanliness in her living quarters, inattention to E. G.'s personal hygiene, and the like. One incident, with -10° temperature in her apartment, resulted in frostbite and the amputation of four of the mother's toes. The court, in substance, found that while the rearing of N. G., a child extensively self-reliant, was within the capabilities of the mother, given appropriate supportive social help, the added burden of E. G., with her tender years, was more than she could manage, and that recurrences of her episodes were apt to take place under this added stress. Medication reduces the chance of such occurrences, but there is an admitted history of failure to take such medication on a regular basis.
The case thus presented is a very close one. We have indeed held, rather firmly, that improvement of parental condition was a bar to the severance of parental rights. In re J. A. S. (Juvenile), 135 Vt. 243, 373 A.2d 558 (1977); In re J. & J. W., supra. But we were also at pains to point out, in In re J. A. S. (Juvenile), that these decisions antedated the passage of what is now 33 V.S.A. § 667. With our decisions undoubtedly in mind, the legislature chose to enumerate with care the factors to be considered by a court in passing upon a petition like the one here involved, for custody of a minor by the Department of Social and Rehabilitation Services without limitation as to adoption. Besides the interactions and interrelationships of the child, his adjustment, and the constructive role of the natural parent, it has defined in precise language what we previously termed "deterioration" and "stagnation." As we commented in In re D. R., supra, 136 Vt. at 481, 392 A.2d at 953, reasonable time is now an element of prime consideration. To sever parental rights completely, temporary placement outside the home must be inadequate to serve the best interest of the child, and a reasonable possibility of family restoration within a reasonable time will operate to bar total termination of parental rights. The factor to be considered is couched in the following language in 33 V.S.A. § 667(3);
(3) The likelihood that the natural parent will be able to resume his parental duties within a reasonable period of time;
. . . .
It is apparent from a reading of the findings, carefully drawn and somewhat extensive, that the trial court gave thoughtful consideration to all the enumerated factors. A growing affection to foster parents was, as is usual at tender years, clearly indicated, as well as adjustment and improvement. Personal contact with the natural mother was shown to be not extensive, due partly to disabilities and illnesses, but nonetheless present. The statutory factors were not specifically enumerated in the findings and conclusions, but we have held this an unnecessary formality. In re G. V. & R. P., 136 Vt. 499, 394 A.2d 1126 (1978). The ability to care for a self-reliant nine year old, coupled with inability to adequately care for a three year old, found ample support in expert testimony, even though there was conflict on the point. And we cannot say, as a matter of law, that the determination that this disability could not be remedied within a reasonable time is *1199 legally unsupportable. The chronic nature of the mother's disability, the unfavorable prognosis indicating future manifestations, and the lurid history of past difficulties capable of repetition, furnish support, as a matter of law, for the trial court's conclusions. The result is not a compelled one; reasonable minds, including our own, might well have differed. But the result is not clearly unreasonable or untenable, and it must stand. In re R. F. (Juvenile), 135 Vt. 275, 277, 376 A.2d 38, 40 (1977). The mother's argument that she has shown some improvement indeed has great force. But it is counterbalanced by expert opinion that this improvement cannot continue, within any reasonably foreseeable time, to a point of resumption of parental duties. A fair review of the evidence indicates her present progress to have achieved what may be characterized as a plateau. This is the stagnation of which our decisions have treated, and the court's finding of "prospective inability for improvement" is supported, even if not compelled, by the record below.
Appellant's objection to the reception of opinion evidence from Dr. Rife is also without merit. The doctor, a qualified psychiatrist, was licensed to practice in Vermont, and his general qualifications were not, and are not now the subject of challenge. The only objection to his trial testimony regarding the mother's illness was that it had to be related to a point in time, the time of his observation. This was done, under a reframed question, to July, 1978. (The date of hearing was October, 1979). Without further objection, the doctor was permitted to testify to the prognosis hereinabove described.
Even apart from the lack of required objection, the answer was admissible. Though the doctor saw the mother only once, he testified to access to records, reports, history, and conversations with her own doctor, all helping form the basis for his conclusions. The objection urged here goes only to the weight to be accorded his opinion by the trier of fact, and no error appears. Lambert v. Fuller, 131 Vt. 181, 303 A.2d 471 (1973). Moreover, the opinion was corroborated in large part by the mother's own expert witness.
Judgment affirmed.
BILLINGS, Justice, dissenting.
I am unable to join the majority opinion. An examination of the record in this case convinces me that the trial court acted prematurely in terminating the residual parental rights of E. G.'s mother.
The power of the court to terminate residual parental rights is included within the provisions of chapter 12 of Title 33. These provisions must always be considered in light of 33 V.S.A. § 631(a)(3), which provides that the purposes of chapter 12 are to be achieved "whenever possible, in a family environment, separating the child from his parents only when necessary for his welfare or in the interests of public safety ...." This Court has often referred to this power of the state to terminate parental rights as "awesome." In re D. R., 136 Vt. 478, 480, 392 A.2d 951, 952 (1978); In re J. & J. W., 134 Vt. 480, 482, 365 A.2d 521, 523 (1976). This power "should be used with extreme care and only as a last resort." In re D. R., supra, 136 Vt. at 480, 392 A.2d at 952.
I do not believe that the situation in the present case calls for such a "last resort" solution. The trial court did find "stagnation" in Mrs. G.'s ability to care for E. G., "with a prospective inability for improvement," but I do not find sufficient evidence of stagnation in the record. On the contrary, it seems clear to me that Mrs. G.'s condition has improved, and that there remains the possibility that within a reasonable time she may be able to resume her parental duties. That is, of course, the issue here; not whether she is at present capable of caring for E. G., but whether she might be able to do so within a reasonable time. I believe the evidence strongly suggests that she may indeed be able to do so.
Two witnesses did recommend that the parental rights of Mrs. G. be terminated, and that E. G. be placed permanently with the foster parents with whom she had been *1200 living. However, it appears to me that in each case this conclusion was motivated more by the belief that placement in this foster home would be desirable than by a belief that Mrs. G. would never be able to adequately care for E. G. "The `best interest of the child' is a useful maxim, but it comes into play only when there is legal justification for the permanent severing of parental rights." In re J. & J. W., supra, 134 Vt. at 486, 365 A.2d at 525 (Larrow, J., concurring). I do not find such a legal justification in this case. I would reverse the order of the trial court to the extent that it terminates Mrs. G.'s residual parental rights in E. G.