458 A.2d 1129 (1983)
In re J.J., H.J., and L.J.
No. 364-81.
Supreme Court of Vermont.
April 5, 1983.
Christopher Baril, Rutland County Deputy State's Atty., Rutland, for plaintiff-appellee.
Timothy N. Maikoff of Smith, Harlow & Liccardi, Rutland, for defendant-appellee.
Barry E. Griffith, Rutland, for defendants-appellees juveniles.
S. Stacy Chapman, III, of Webber & Costello, Rutland, for defendant-appellant.
Before BILLINGS, C.J., HILL, UNDERWOOD and PECK, JJ., and LARROW, J. (Ret.), Specially Assigned.
UNDERWOOD, Justice.
The three juveniles subject to this appeal, J.J., H.J., and L.J., were adjudged children in need of care and supervision and committed to the custody of the Department of Social and Rehabilitation Services [SRS] on May 1, 1975. The children have remained in state custody from that date to the present.
The disposition order of May 1, 1975, preserved the parents' residual rights. On January 29, 1981, the State, pursuant to 33 V.S.A. § 659(a), filed a motion to sever those rights. The motion prayed for a transfer of custody of the children to SRS without limitation as to adoption. The mother of the three children surrendered them for adoption and waived her presence through counsel. The only opposing party to the motion was their father. Hearings on the motion were held on June 3, 1981, *1130 and June 30, 1981. As a result of these hearings the juvenile court granted the motion to modify on July 28, 1981. It is from the court's order severing his parental rights with respect to all three children that the father now appeals.
On appeal the father argues that the juvenile court erred in (1) finding that he would not be likely to resume his parental duties within a reasonable period of time, (2) severing his residual parental rights with respect to his youngest son, L.J., and (3) removing his residual parental rights despite a finding that he had made a "marked improvement" in some aspects of his life. We disagree with all three of the father's contentions and affirm.

I.
A juvenile court considering a petition for modification under 33 V.S.A. § 659(a), wherein SRS is seeking custody without limitations as to adoption, must consider the legislative criteria for determining the child's best interest as set forth in 33 V.S.A. § 667. The considerations of § 667 are:
(1) The interaction and interrelationship of the child with his natural parents, his foster parents if any, his siblings, and any other person who may significantly affect the child's best interest;
(2) The child's adjustment to his home, school, and community;
(3) The likelihood that the natural parent will be able to resume his parental duties within a reasonable period of time; and
(4) Whether the natural parent has played and continues to play a constructive role, including personal contact and demonstrated love and affection, in the child's welfare.
With respect to the third factor, § 667(3), the father asserts that the court's determination that he would not be likely to resume his parental duties within a reasonable period of time is without justification. However, we have thoroughly reviewed the record in this case and find that the facts presented fully support the court's conclusion on this matter.
The evidence indicates that at the date of the original disposition order, May 1, 1975, placing the three juveniles in the custody of SRS, J.J. and H.J. were four and three years old respectively, and L.J. was a fourteen month old infant. The children were found to be in need of care and supervision on the basis of abandonment.
L.J. has resided with the same foster parents, Mr. and Mrs. G., continuously from the date of the original disposition until the present. J.J. and H.J. resided with the same foster parents, Mr. and Mrs. F., from May 1, 1975, to June 20, 1977, when they were returned to the father and his second wife. They resided with the latter until September 7, 1978. On that date they were removed from the home and placed back with Mr. and Mrs. F. due to abuse. They have resided with them until this date.
The record further indicates that the father's personal history was volatile at best. The trial court found, and it is amply supported by the evidence, that:
[The father's] past has been . . . uncertain and . . . fraught with turmoil, mobility and indecision. He was married and divorced [twice]. . . . Each marriage was dominated by drinking, emotional abuse, alleged infidelity and constant movement. In addition, there was evidence of abandonment and physical abuse. While all this was not exclusively the fault of [the father] he did not seem to have the ability to deal with it productively and most recently in January of 1981, he was forced to vacate an apartment occupied by his most recent wife, . . . which necessitated police intervention and involved destruction of some personal property.
As for the evidence about the father's present state, it indicates that he lives with a friend in a single room, sharing toilet facilities with the owner's family. He has no kitchen for his personal use and depends upon the friend for meals. The father's own characterization of the living arrangement *1131 was that it was not even an appropriate place for him to live let alone his children.
At the time of the hearing the father was unemployed. He had not contributed monetary support for the children since they were taken into custody, and expressed an unwillingness to do so. While stating that he would like his children returned to him "sometime," he testified that he is not in a position to take custody of the children at the present time. His mental health counsellor agreed and further testified that she did not know if he would ever be in a position to do so.
In light of all this, we hold that the court's conclusion that there is no likelihood that the father will be able to resume his parental responsibilities within a reasonable period of time is supported by the record below. Therefore, it must stand.

II.
The father next argues that the juvenile court erred in severing his parental rights with respect to L.J.
The elements of 33 V.S.A. § 667(3) with respect to the prospect of change in parental circumstances have been discussed above. Regarding the other criteria of § 667, the evidence first indicates that the relationship of L.J. to his foster parents is of a superior quality when compared to the relationship with his father. The child has resided exclusively with his foster family since infancy. The foster parents have borne the responsibility of raising the child through early development.
The foster parents encourage the child to excel in school and reward him appropriately. L.J. refers to them as mom and dad and to the natural children of the foster parents as if they were his siblings. The evidence indicates that L.J. has adjusted to his foster family. He does well in school and in performing his farm chores. Moreover, he desires to stay with his foster parents and they wish to adopt him.
Given this evidence, it was not error for the court to conclude that it was in L.J.'s best interest to grant the petition to modify.

III.
In its findings the juvenile court stated the following:
[The father] has made a marked improvement in his situation by stopping a difficult drinking habit temporarily and counselling at Rutland Mental Health and a general desire to turn things around. In spite of this, his limitations and assets both physical and emotional are deep. (emphasis added).
It was the opinion of the expert testimony, which testimony was offered on behalf of [the father] that visits to the Rutland Mental Health Service and in particular to Veronica Murray, the counsellor, [sic] were motivated because of this Petition and that while he continued to improve emotionally, she had no opinion or prognosis as to whether or not he will be able to resume his position as a parent. (emphasis added).
The father argues that the court should not have granted the modification motion where it found a "marked improvement" in his life situation. However, while parental improvement is a factor to consider, the real test is whether there is a reasonable possibility of reuniting parent and child within a reasonable period of time. In re E.G., 139 Vt. 171, 173-74, 423 A.2d 1197, 1198-99 (1980).
The court correctly focused on the prognosis of the father's ability to resume his parental duties. It gave consideration to the two areas where improvement was shown, control of a drinking problem and attendance at mental health counseling sessions, but found that this did not outweigh the six year history of familial instability and the amorphous prospect that the father would again be in a position to provide a stable home for his children. Considering the evidence as a whole, it was not unreasonable for the court to conclude that the *1132 father would not be able to take custody of the children within a reasonable period of time. As such, we must affirm. In re R.F., 135 Vt. 275, 277, 376 A.2d 38, 40 (1977).
Affirmed.