510 A.2d 967 (1986)
In re D.P. and J.P.
No. 82-578.
Supreme Court of Vermont.
March 28, 1986.
*968 Christopher D. Ekman, Franklin County Deputy State's Atty., St. Albans, for plaintiff-appellee.
Nancy E. Kaufman, Montpelier, and Charles S. Martin, Barre, for defendant-appellant father.
Michael J. Gobin, Shelburne, and Michael R. Gadue, Burlington, for defendant-appellant mother.
Steve Dunham, Public Defender, St. Albans, for defendants-appellees juveniles.
Before ALLEN, C.J., and HILL, UNDERWOOD, PECK and GIBSON, JJ.
ALLEN, Chief Justice.
This case is an appeal from orders terminating parental rights and denying visitation rights pending appeal.
The appellants are the natural parents of D.P. and J.P. State intervention into the family began on August 7, 1981, after D.P., then six months old, was brought to a hospital with a fractured right elbow. X-rays revealed two healing rib fractures which, together with the elbow fracture and earlier treatment for injuries to D.P.'s upper lip as well as for bruises, raised the suspicion of child abuse. A petition to have D.P. found to be in need of care and supervision (CHINS) was not contested by either parent. A disposition order was entered on February 23, 1982, continuing custody with the Commissioner of Social and Rehabilitation Services (SRS) but placing the child in the home of her mother. A variety of conditions were placed in the order: visits by a pediatrician, by a visiting nurse, and by SRS, counseling of the father, as well as marital counseling for both parents; and continued employment by the father. The father was to live separately from the mother and D.P., with his gradual reintroduction into the family, and he was ordered not to discipline D.P. Finally, because the mother was then pregnant, it was ordered that a "suitable adult" live with the family for three weeks following the mother's return home after delivery of the new baby.
J.P. was born on April 21, 1982. Two months later he was admitted to the hospital for emergency treatment of a perforated colon. X-rays revealed two healing rib fractures similar to those previously incurred by D.P. Following J.P.'s admission to the hospital, SRS filed a CHINS petition on his behalf, and asked the court to modify the disposition order concerning D.P. to terminate parental rights.
*969 Following hearings on the merits, on October 21, 1982, the court issued an order finding J.P. to be in need of care and supervision, and continuing the temporary custody of D.P. in SRS until final disposition. On December 22, 1982, the court ordered the termination of parental rights of the appellants as to D.P. and J.P.
During the course of the proceedings begun after J.P.'s admission to the hospital, the parents sought, and obtained, supervised visitation rights to their children, then in the temporary custody of SRS. In November, 1982, the father was sentenced to 13½ to 17 years imprisonment following his plea of guilty to charges of aggravated assault and child abuse, and his visitation rights were ended. The record does not disclose the date on which the mother's visitation rights were ended. After the December 22 order, both parents moved for a stay of termination, and for visitation, pending appeal of the termination order to this Court. Those motions were denied, following which the father moved this Court for a stay of the termination order and for visitation rights. This Court ordered the automatic stay of the termination order, but the juvenile court retained jurisdiction with respect to its temporary order granting custody to SRS.
Following a hearing, the juvenile court issued an order on December 7, 1983, denying the parents' requests for visitation rights pending appeal.
Upon appeal, the parents claim three errors: first, that there was no material change in circumstances justifying the amendment of the original disposition order as to D.P.; second, that there was insufficient evidence to terminate parental rights because the court failed adequately to investigate less drastic alternatives; and third, that the court failed to indicate in its findings that it had applied the clear and convincing standard of proof. The father also argues that the court erred in ending the parents' visitation rights pending the appeal of the termination order. In addition, the mother argues that the findings of fact were insufficient because they do not indicate that she was either involved in abuse of the children or guilty of culpable indifference; that inadmissible testimony was relied upon at the merits hearing; and that there was insufficient evidence to support the finding that she would be unable to resume her parental duties within a reasonable time.

I.
The juvenile court may modify a disposition order upon a showing of "a substantial change in material circumstances and that the modification sought will be in the best interests of the child." In re G.V. & R.P., 136 Vt. 499, 502, 394 A.2d 1126, 1128 (1978) (citing 33 V.S.A. § 659(a)). The parents claim that the State failed to make such a showing, and thus that the modification of the original disposition order concerning D.P. was unjustified.
The parents claim that the changes in circumstances relied upon by the juvenile court fall into three categories: episodes of abuse occurring prior to the original disposition order; the failure by the parents to observe the conditions set out in that order; and the abuse of D.P.'s younger brother, J.P. None of these, according to the parents, justifies a finding of a material change in circumstances.
It is not necessary to consider whether the juvenile court improperly relied upon facts underlying the original disposition order, or upon violations of conditions which, the parents contend, the court had no jurisdiction to impose, because the remaining facts relied upon by the court justify modification of the order. The court's findings of fact indicate that the father, subsequent to the original disposition order, seriously injured his other child, J.P., by forcing tap water into J.P.'s rectum, causing J.P.'s colon to rupture and nearly causing his death. The court found that the mother believed that the father had caused J.P.'s injury, but did not advise the medical professionals giving emergency treatment to J.P. of that fact. The court also found *970 that, subsequent to the original disposition order, the father inflicted rib injuries upon J.P. similar to those he inflicted upon D.P., and that the parents gave inconsistent explanations of the rib injuries.
The parents contend that evidence of mistreatment of one child is insufficient to establish abuse or neglect with respect to a sibling. In In re J.M., 131 Vt. 604, 608-09, 313 A.2d 30, 32-33 (1973), this Court found that neglect as to one child had not been established where the evidence demonstrated neglect as to four older children. Whether treatment of one child is probative of neglect or abuse of a sibling must be determined on the basis of the facts of each case. In this case, the later aggravated abuse of J.P. sufficed to establish a material change in circumstances as to D.P. The passage of time without any improvement for the better"stagnation in parental capacity"may establish a material change in circumstances. In re Certain Neglected Children, 134 Vt. 74, 77, 349 A.2d 228, 230 (1975). Here, the court not only found that the father broke J.P.'s ribs, an injury "strikingly similar" to that which he earlier inflicted upon D.P., but also that the nature of other injuries inflicted upon J.P. had escalated in seriousness from those earlier inflicted upon D.P. This evidence illustrates not only stagnation, but deterioration. Where serious, life-threatening injuries have been inflicted upon one child, the juvenile court will not be required to wait until further injuries are inflicted upon its sibling, previously also a victim of abuse, in order to conclude that a substantial change in material circumstances has occurred as to that sibling. The father's argument that the evidence suggests that he only harms newborns is unconvincing. The difference in age of the children is less than a year and a half, and the evidence was insufficient to establish that such a fine line can be drawn between children young enough to be subject to abuse by the father and those beyond that age.

II.
The parents next argue that the court failed to investigate adequately less drastic alternatives to permanent termination of parental rights, as required by this Court's holding in In re E.G., 139 Vt. 171, 173, 423 A.2d 1197, 1198 (1980), that a court terminating parental rights must conclude that "temporary placement outside the home [is] inadequate."
As was noted in E.G., the question of whether temporary placement outside the home would be an adequate alternative is necessarily subsumed within the determination of whether the natural parent will "be able to resume his parental duties within a reasonable period of time." Id. at 174, 423 A.2d at 1198 (citing 33 V.S.A. § 667(3)). If the court finds that no such resumption of parental duties is possible, then clearly temporary placement in a foster home would be an inadequate solution. Here, the court found no possibility of ever restoring the children to the father, or of restoring the children to the mother within a reasonable time.

III.
The parents' third argument is that the court failed to indicate that its findings of fact at the disposition stage had been made pursuant to the "clear and convincing" standard required in termination cases. Santosky v. Kramer, 455 U.S. 745, 747-48, 102 S.Ct. 1388, 1391-92, 71 L.Ed.2d 599 (1982); In re A.D., 143 Vt. 432, 435, 467 A.2d 121, 123 (1983).
The court stated that it was "convinced beyond any reasonable doubt that [the father] is an unfit parent and a serious threat to his children's physical well-being." The court also stated that the evidence "overwhelmingly indicates that [the father] is incapable of assuming parental duties toward either of these children." The proof exceeded the requisite standard.
Insofar as concerns the mother, the court stated, "The Court is unable to predict with any certainty when, if ever, [the *971 mother] will be able to resume parental duties.... This Court concludes that there is no reasonable possibility of restoration of [the mother], J.P. and D.P. within a reasonable time, given the facts and circumstances of this case." It is not possible to conclude from this language that the court applied the correct legal standard to the evidence concerning the mother's parental unfitness. Therefore, the matter must be remanded for application of the correct standard.
Because of the passage of time since the original disposition hearing, a new hearing should be held to consider the present circumstances of the mother, J.P., and D.P. In re M.B., L.B. & G.B., 147 Vt. ___, ___, 509 A.2d 1014, 1017 (1986). The holding of a new disposition hearing makes it unnecessary to consider the mother's challenges to the evidence and findings from the original disposition hearing.

IV.
Finally, the father challenges the juvenile court's termination of his visitation rights pending his appeal of the disposition order.
This Court recognizes that, although appeals in juvenile matters are given priority, see 12 V.S.A. § 5611, V.R.A.P. 8(c)(3), substantial delays may result before an appellate decision is rendered. In the meantime, if visitation rights have been ended, parent and child may become strangers despite the fact that the termination order may eventually be reversed.
However, an order terminating parental rights is issued only after the juvenile court has found, clearly and convincingly, that the parent is unfit, and demonstrably incapable of providing an appropriate home. In re Y.B., 143 Vt. 344, 347, 466 A.2d 1167, 1169 (1983). Children whose parents have been found to meet this description have a need, and a right, to be raised in a stable family environment. Continued visitation may be psychologically disruptive, particularly in cases such as this, in which the termination order resulted from severe physical abuse by one of the parents. See In re E.F.V., 315 Pa.Super. 246, 254, 461 A.2d 1263, 1267 (1983) (visitation pending termination proceedings would undermine child's stability and engender severe developmental and behavioral problems).
In light of the balancing of the various factors which must precede a decision as to whether to permit continuing visitation, it must be concluded that a fixed rule is inappropriate. The decision should be made by the juvenile court in its discretion, in light of all of the evidence placed before it at both the merits and the disposition hearings. Thus, while termination orders shall not be automatically stayed, the juvenile court may stay its order, in which case it shall enter a temporary order governing custody and visitation pending appeal. V.R.A.P. 8(c)(1). A motion for relief from the court's order may be made to this Court pursuant to V.R.A.P. 8, while an appeal on the merits is pending.
In the event that visitation is denied, the dissolution of familial ties resulting from lack of contact may not be relied upon in later proceedings to the detriment of the parents. See In re Donna W., 325 Pa.Super. 39, 61, 472 A.2d 635, 646 (1984).
In light of our affirmance of the order terminating the father's parental rights, the juvenile court need not review its order denying the father visitation. However, in conducting the new disposition hearing as to the mother, the court should be guided accordingly.
The order of the juvenile court terminating the parental rights of the father and the mother to D.P. and J.P. is affirmed as to the father. The order is reversed, and the matter remanded for a new disposition hearing, as to the mother.