## In re C. W., Juvenile

[532 A.2d 566]

No. 86-029

Present: **Allen, C.J., Peck, J., and Barney, C.J. (Ret.), Costello, D.J. (Ret.), and Martin, Supr. J., Specially Assigned**

Opinion Filed July 24, 1987

*Jeffrey L. Amestoy*, Attorney General, Montpelier, and *Michael O. Duane*, Assistant Attorney General, and *Barbara L. Crippen*, Administrative Legal Assistant (On the Brief), Waterbury, for Plaintiff-Appellee.

*Martin and Paolini*, Barre, for Defendant-Appellant.

**Costello, D.J.** (Ret.), Specially Assigned. This is an appeal from a disposition order terminating the appellant mother's parental rights, and those of the putative father, in C. W., and awarding custody and guardianship to the Commissioner of Social and Rehabilitation Services (SRS), without limitation as to adoption. We affirm with respect to the mother, but vacate and remand the order as applied to the father.

C. W. was adjudged a child in need of care and supervision on September 3, 1982. 33 V.S.A. § 654. At a disposition hearing held soon after, C. W. was placed in the custody of SRS, with residual parental rights remaining with the mother. *Id.* §§ 656 and 658. At the time of those proceedings, the appellant was eighteen years of age, and her son, C. W., was just under two years old.

In February of 1985, SRS filed a petition to modify the disposition order. See *id.* § 659. SRS sought transferal of residual parental rights to SRS, and recommended that C. W. be adopted by the foster parents with whom he was living. In June 1985, the mother also filed a motion to modify the disposition order, requesting the return of custody to her. After a hearing, the court granted the State's requested relief, awarding custody to SRS without limitation as to adoption.

"The juvenile court may modify a disposition order upon a showing of 'a substantial change in material circumstances and that the modification sought will be in the best interests of the child.'" *In re D. P. & J. P.*, 147 Vt. 26, 30, 510 A.2d 967, 969 (1986) (quoting *In re G. V. & R. P.*, 136 Vt. 499, 502, 394 A.2d 1126, 1128 (1978)). "The passage of time without any improve-

ment for the better—'stagnation in parental capacity'—may establish a material change in circumstances." *Id.* at 30-31, 510 A.2d at 970 (quoting *In re Certain Neglected Children*, 134 Vt. 74, 77, 349 A.2d 228, 230 (1975)). 33 V.S.A. § 667 establishes the criteria for assessing the best interests of the child.*

■ The mother first claims on appeal that the juvenile court committed reversible error by failing to apply the "clear and convincing" standard to the evidence of her parental unfitness. She contends, correctly, that the United States Supreme Court held in *Santosky* v. *Kramer*, 455 U.S. 745, 769 (1982), that termination of residual parental rights must be based on findings established by clear and convincing evidence. Moreover, reversal is mandated where "[i]t is not possible to conclude . . . that the [juvenile] court applied the correct legal standard . . . ." *In re D. P. & J. P.*, 147 Vt. at 32, 510 A.2d at 971. The mother asserts that it is unclear in this case whether the court applied the clear and convincing standard.

■ A review of the record demonstrates that the court applied the correct standard. In one finding the court expressly adopted an expert witness's statement that this was a "clear case" for termination of parental rights. "Clear" means "[p]lain, evident, free from doubt or conjecture," even "beyond reasonable doubt." Black's Law Dictionary 227 (5th ed. 1979). The court also found that there is "*no* likelihood that the mother will be able to resume parental duties within a reasonable period of time." (Emphasis added.) Compare *In re D. P. & J. P.*, 147 Vt. at 32, 510 A.2d at 970-71 (juvenile court stated that "[t]he Court is *unable to pre-*

---

* § 667. Best interests of the child

At the time of the review under section 658 of this title, a modification hearing under section 659 of this title, or at any time a petition is filed by the department of social and rehabilitation services for custody of a minor without limitation as to adoption, the court shall consider the best interests of the child in accordance with the following:

(1) The interaction and interrelationship of the child with his natural parents, his foster parents if any, his siblings, and any other person who may significantly affect the child's best interests;

(2) The child's adjustment to his home, school, and community;

(3) The likelihood that the natural parent will be able to resume his parental duties within a reasonable period of time; and

(4) Whether the natural parent has played and continues to play a constructive role, including personal contact and demonstrated love and affection, in the child's welfare.

*dict* with any certainty when, if ever, [the mother] will be able to resume parental duties . . . . This Court concludes that there is no *reasonable* possibility of restoration of [the mother], J. P. and D. P. within a reasonable time . . . ." (emphasis added)). Notwithstanding the court's omission of the actual term "clear and convincing," the findings indicate that the court applied the correct legal standard.

The mother next contends that the evidence which premises the findings with respect to 33 V.S.A. §§ 667(3) and (4) is not in fact clear and convincing. With regard to § 667(3), she first asserts that in light of the court's finding that she had made "marked progress" in dealing with the problems that had resulted in intervention by SRS, the court erred in finding there was "no likelihood" she would be able to resume her parenting skills within a reasonable time.

In *In re J. J., H. J., & L. J.*, 143 Vt. 1, 6, 458 A.2d 1129, 1131 (1983), responding to the appellant parent's contention that termination of parental rights was not proper where the trial court found he had made a " 'marked improvement' in his life situation," this Court stated that "while parental improvement is a factor to consider, the real test is whether there is a reasonable possibility of reuniting parent and child within a reasonable period of time," and that the focus of this test is "on the prognosis of the [parent's] ability to resume [her] parental duties." *Id.*

The court's numerous and detailed findings which bear on the likelihood of a reunion between mother and child are as follows:

On November 19, 1982, less than one month after the initial disposition hearing, C. W.'s mother was convicted of unlawful trespass and placed on probation. Approximately one year later, she was convicted of burglary. She was incarcerated for two months in the Spring of 1983, for violating the terms of her probation by abusing alcohol. She was incarcerated again from August, 1983 through November, 1983, for failing to meet bail on the charge of attempting to obtain drugs with a false prescription. She then served a ninety-nine day sentence, and was placed on probation.

After her release, the mother entered into a written service agreement with SRS, by which she agreed to attend counselling, and to avoid problems with drugs and the law. This plan was approved by the juvenile court at the eighteen-month dispositional review, held pursuant to 33 V.S.A. § 658. During this review, the

court warned the mother that she could lose her parental rights if she failed to follow through on the case plan. Nonetheless, three months after the hearing, on June 20, 1984, the mother was incarcerated for violating the terms of her probation. While her minimum release date was only one month later, the mother served her full sentence until her maximum release date of April 22, 1985. She was required to serve out her full term because of her behavior in prison, including a finding of THC in her urine (indicating marijuana use). It was during this period that SRS petitioned for termination of parental rights. When the hearing on this motion was held on August 9, 1985, the mother was again in custody, serving a thirty-day sentence for theft of services. Moreover, between her release in April, 1985, and her reincarceration three months later, on June 28, 1985, the mother received emergency treatment for extreme intoxication.

These findings were "proof exceed[ing] the requisite standard" of clear and convincing evidence, *In re D. P. & J. P.*, 147 Vt. at 32, 510 A.2d at 970, that the mother would be unable to resume her parental duties within a reasonable time.

The mother also asserts that the court's findings under 33 V.S.A. § 667(3) indicated an undue reliance upon evidence of the "mere passage of time," as condemned by *In re J. & J. W.*, 134 Vt. 480, 485-86, 365 A.2d 521, 525 (1976) (Larrow, J., concurring) and upon evidence of the "loss of the psychological parent relationship between natural parent and child," as condemned in the majority opinion of *J. & J. W.*, *id.* at 484, 365 A.2d at 524. Reliance on either of these factors alone would have been error according to *J. & J. W.* The court's numerous and detailed findings as cited above, however, demonstrate that these concerns were but part of the total picture reviewed by the court in assessing the likelihood that the mother would be able to resume her parental duties within a reasonable time.

With respect to § 667(4), under which the court assessed whether the mother had played and would continue to play a constructive role in the child's welfare, the mother asserts the court improperly relied on its earlier denial of a motion for increased visitation as evidence of her inability to play a constructive role in C. W.'s welfare. The mother correctly asserts that a juvenile court may not rely on an earlier denial of visitation rights to the detriment of parents in subsequent proceedings. *D. P.*, 147 Vt. at 33, 510 A.2d at 971.

It is unnecessary to consider whether the court improperly relied upon its earlier refusal to increase visitation, given the overwhelming evidence, depicted in the findings, of the mother's failure to fulfill the criterion set forth in § 667(4). See *D. P.*, 147 Vt. at 30, 510 A.2d at 969. The record between the initial disposition hearing and the bringing of the motion to modify was replete with evidence of her legal conflicts and substance abuse, which continued until, and even during, the hearing on the motion to modify. These central, ongoing problems with the mother's lifestyle are clear and convincing evidence that the mother had not been able, and would continue to be unable, to play a constructive role in C. W.'s upbringing, regardless of any possible reliance by the court on the denial of increased visitation.

Beyond her claims of error directed at the merits of the court's disposition order, the mother claims error in the admission of certain evidence at the hearing. She contends that the court erred in admitting through cross-examination of the mother evidence of a pending criminal charge which had not resulted in a criminal conviction, and did not involve a crime of moral turpitude. This claim of error is unfounded. When the State first questioned the mother about the existence of the outstanding charge, an objection was raised before any questions were asked about its substance, and a colloquy among the parties and the judge ensued. The outcome of this discussion was a ruling that prevented the State from asking any questions about the outstanding charge. Moreover, while the mother claims error on appeal in the mere introduction by the State of the existence of the outstanding charge, during the disposition proceedings the mother was willing to stipulate to the existence of the charge. In sum, the court admitted no more evidence about the outstanding charge, and no less, than the mother herself was willing to have admitted.

The mother also asserts that the trial judge exhibited a personal bias against her by asking her questions about her conduct that were based on the judge's personal knowledge, rather than on evidence in the record. As involving matters outside the record, these questions were improper. Nonetheless, within the entire context of the court's conduct of the hearing, and the detailed findings which arose therefrom, these few questions do not create doubt about the judge's ability to "decide the case impartially and without bias." *Richard* v. *Richard*, 146 Vt. 286, 287-88, 501 A.2d 1190, 1191 (1985).

■ Lastly, this Court notes that, in addition to terminating the residual parental rights of the mother, the trial court also terminated those of the putative father, without a hearing on the merits of his case. No name appears upon the birth certificate to indicate the name of the father, and the putative father named in the pleadings has assumed no responsibility or concern for C.W., nor appeared at any proceedings. Termination of residual parental rights without a hearing is a violation of the Fourteenth Amendment. *Stanley* v. *Illinois*, 405 U.S. 645, 657-58 (1972). Though the demands of procedural due process must be tailored according to the facts of each case, "when notice is a person's due, process which is a mere gesture is not due process." *Mullane* v. *Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313-14, 315 (1950). While the record indicates that the State made some attempts by phone to locate the putative father at his last known address, these efforts fall short of the "reasonable diligence" requirement of 33 V.S.A. § 648(a). The court's order with regard to the father cannot stand.

*Affirmed with respect to the mother; vacated and remanded with respect to the father.*