# In re B.B., Juvenile

[621 A.2d 1270]

No. 92-047

Present: **Allen, C.J., Gibson, Dooley and Johnson, JJ.**

Opinion Filed January 15, 1993

Motion for Reargument Denied February 10, 1993

*Jeffrey L. Amestoy*, Attorney General, Montpelier, and *Barbara L. Crippen* and *Martha Csala*, Assistant Attorneys General, Waterbury, for Plaintiff-Appellee.

*E.M. Allen*, Defender General, and *Henry Hinton*, Appellate Defender, Montpelier, for Defendant-Appellant.

**Dooley, J.** M.B., the mother of B.B., appeals from an order of the Caledonia Family Court terminating her parental rights with respect to her son. She argues that the extended continuation of the proceedings below to determine how she responded to therapy was an improper procedure. We agree, and reverse and remand.

B.B. was born on January 17, 1990, and was placed in the custody of the Commissioner of Social and Rehabilitation Services (SRS) in July of 1990. M.B. did not oppose SRS custody and stipulated to the CHINS adjudication. The State then sought termination of parental rights at the initial disposition hearing. M.B. opposed termination.*

The family court took extensive evidence at the disposition hearing. It found that, from B.B.'s birth, M.B. was helped by a number of service providers, but these providers became increasingly concerned about M.B.'s parenting. In particular, they observed that M.B. could not control her temper and that she vented her anger on B.B. through verbal and physical abuse. She also abused alcohol. When social agency efforts to improve the situation failed, the State intervened and took custody of B.B.

The evidence at the detention hearing detailed the above history, as well as a number of failed post-detention attempts to help M.B. improve her parenting skills. Based on the testimony of the psychiatrist who evaluated M.B. for SRS, the court found that M.B. met the criteria that describe an individual with a mixed personality disorder, and had many of the characteristics of other types of personality disorders. The court found that these personality traits seriously impair M.B.'s ability to parent.

The court detailed, but did not adopt, the psychiatrist's opinion that M.B. would need two years of intensive therapy, and up to five years of less intensive therapy, before she could adequately and safely care for B.B. It adopted instead the evidence of the psychologist who testified for M.B. that (1) she was motivated to continue treatment; (2) she was demonstrating an increasing insight into her problems, and recognized that she had abused B.B. and expressed remorse; (3) she was concerned for B.B.'s well-being; (4) she was working diligently to restructure her life in a positive way; and (5) she had shown improvement. It also adopted the psychologist's recommendation that the situation be reassessed at three-month intervals because it was impossible to say when M.B. would be ready to fulfill her parental responsibilities.

---

* B.B.'s father relinquished his parental rights on the first day of the disposition hearing. He is not involved in this appeal.

The court concluded that the State "has [not] shown clearly and convincingly that . . . [M.B.] will not be unable to resume parental duties within a reasonable period of time." Rather than denying the termination request made by SRS, however, the court reserved its ruling on termination and continued the matter, pursuant to 33 V.S.A. § 5527(e), for two or three months to take further evidence on M.B.'s progress. It transferred custody and guardianship of B.B. to SRS.

A renewed hearing commenced three months later. The evidence was similar to that received earlier, with M.B.'s psychologist testifying that she was continuing to make progress. The court's findings detail the efforts undertaken by social service providers between the hearings, and include the statement that M.B. "has not yet learned the skills necessary to provide adequate parental care" for B.B. The findings also show that B.B. has adjusted well to his foster home and that the foster parents want to adopt him.

In its conclusions, the court revisited the issue of whether M.B. could resume her parental responsibilities within a reasonable period of time. It concluded:

> Had . . . [M.B.] resolved her own problems and been ready to resume her role as . . . [B.B.'s] mother at the end of the summer, the court would have given serious consideration to denying the state's petition. However, despite her commendable efforts at addressing her own problems in therapy, and despite continued progress in this regard, she still has not achieved the requisite emotional stability. Moreover, she has not yet developed the necessary parenting skills, and, as a result, her interaction with . . . [B.B.] continues to be neither positive nor constructive. And one can only speculate as to when she might be able to accomplish these twin goals of emotional stability and adequate parenting ability.

> [T]he focus must be on . . . [B.B.'s] needs. He needs stability, and a loving, nurturing and safe environment. And these needs must be met now, not at some indeterminate point in the future. [M.B.] . . . cannot meet these needs now, and a reasonable time has already expired.

The court granted the request to terminate M.B.'s parental rights, and this appeal followed.

Relying on *In re A.A.*, 134 Vt. 41, 349 A.2d 230 (1975), and *In re R.B.*, 152 Vt. 415, 566 A.2d 1310 (1989), M.B. argues that the court's initial order, reserving decision on the termination request and holding open the record for evidence of her future progress, was error that requires reversal of the subsequent termination order. The circumstances of *In re A.A.* are almost identical to those present here. At disposition, the parties stipulated to custody and guardianship transferral to SRS, but did not agree on the State's request to terminate residual parental rights. The court did not act on the request, but instead scheduled, in the disposition order, a "review" hearing on it for six months later. After the later hearing, the court terminated parental rights. This Court reversed, finding in the juvenile statutes no authority for such a procedure. *In re A.A.*, 134 Vt. at 43, 349 A.2d at 232.

In *In re R.B.*, the disposition order specifically allowed for review at any time after thirty days, with the burden of proof allocated as in a normal disposition hearing. Relying on *In re A.A.*, we found the review provision invalid, reasoning:

> The reopening provision meant that the disposition order was only temporary and subject to relitigation at any time. It placed R.B. in a state of continuing limbo rather than creating a stable living arrangement, as the law requires. Further, the order cannot be reconciled with the Legislature's concern that disposition orders follow shortly after the merits determination, as evidenced by the requirement that the disposition hearing be held no later than thirty days after the merits hearing.

152 Vt. at 422, 566 A.2d at 1313–14.

The State makes two arguments to distinguish *In re A.A.* and *In re R.B.* The first is that the court is authorized to act as it did by 33 V.S.A. § 5527(e), which provides:

> (e) On its own motion or that of a party, the court may further continue the hearing for a reasonable period to receive reports and other information bearing on the disposition or need for treatment, and, in such event, shall make an appropriate order for detention or temporary care of the child or the continuation thereof or his release from detention or temporary care subject to supervision of the court

during the period of the continuance. In scheduling investigations and hearings, the court shall give priority to proceedings in which a child is detained or has otherwise been removed from his home before an order of disposition has been made.

As emphasized in *In re R.B.*, the statutory scheme has specific time deadlines for the holding of events, including for the disposition hearing. See 33 V.S.A. § 5526(b) (disposition hearing must be held no later than thirty days following the CHINS adjudication). Section 5527(e) allows that deadline to be extended to develop additional evidence about the current situation of the child or parents. We cannot find within it an authorization to continue the disposition hearing to determine how the situation of the child or parent will change over time.

The language of the section clearly describes situations where the evidence is inadequate to reach a disposition conclusion and a temporary care order must be made. That reading is reinforced by the scheduling priority in the second sentence for cases where the child is in SRS custody. In this case, however, all the evidence necessary to a disposition order was received. Further, the court made a disposition order transferring custody and guardianship to SRS, and the court's conclusion regarding M.B.'s capacity to parent within a reasonable period of time mandated a denial of the request for termination of parental rights. Compare *In re A.A.*, 134 Vt. at 43, 349 A.2d at 232 (court made disposition order so continuance could not have been to gather data for disposition). The language of § 5527(e) cannot be stretched to fit this case.

 Moreover, the use of § 5527(e) to evaluate changes in circumstances over time is inconsistent with the remainder of the statutory scheme. A disposition order may be modified at any time on petition of a party, or on the court's own initiative, "on the ground that changed circumstances so require in the best interests of the child." 33 V.S.A. § 5532(a). Thus, in a request for termination of parental rights after the initial disposition, the State must show a substantial change in material circumstances since the disposition order, and that termination is in the best interest of the child, as evaluated in light of the standards contained in 33 V.S.A. § 5540. See *In re S.R.*, 157 Vt.

417, 420, 599 A.2d 364, 366 (1991). By using a continuance in the proceeding to evaluate the circumstances of B.B. and M.B. over time, the family court eliminated the first requirement for termination, a substantial change in material circumstances. We believe the procedures were intentionally constructed by the Legislature to require this element in any post-disposition termination.

The State's second argument is that M.B. cannot appeal the procedural error because she failed to object to the continuance in the family court. We note that in neither *In re A.A.* nor *In re R.B.* were there objections to the procedure in the juvenile court. In *In re A.A.* we reversed the termination order despite the lack of objection below.

■ As is apparent from the discussion above, the real defect in the termination order is that it was reached with no finding of substantial change in material circumstances from the initial disposition order. That is not a technical defect; the whole thrust of M.B.'s position was that she was continuing to make progress as the psychologist predicted and thus the circumstances were as found at the disposition hearing. Cf. *In re H.A.*, 153 Vt. 504, 515, 572 A.2d 884, 890 (1990) (reversal of termination order not required because juvenile court failed to explicitly find a change in circumstances where court recognized the requirement and factual findings overwhelmingly showed the required change). In a number of cases, we have reversed disposition orders which were based on an error in the standard to be applied, or on inadequate findings, with no showing that the error had been raised below. See, e.g., *In re M.B.*, 147 Vt. 41, 44–45, 509 A.2d 1014, 1017 (1986); *In re D.P.*, 147 Vt. 26, 32, 510 A.2d 967, 970–71 (1986). As in *In re A.A.*, we do not believe that further preservation was required here.

Since the family court's initial disposition order was de facto a denial of the request for termination of parental rights, any termination order must meet as a threshold the changed circumstances requirement of 33 V.S.A. § 5532(a). There has been no finding that this requirement has been met.

*Reversed and remanded.*