*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

**ENTRY ORDER**

SUPREME COURT DOCKET NO. 2016-209

OCTOBER TERM, 2016

| | |
|---|---|
| In re H.P., Juvenile | } APPEALED FROM: |
| | } |
| | } Superior Court, Chittenden Unit, |
| | } Family Division |
| | } |
| | } DOCKET NO. 355-11-14 Cnjv |

Trial Judge: Thomas J. Devine

In the above-entitled cause, the Clerk will enter:

Mother appeals an order of the superior court, family division, terminating her parental rights with respect to her daughter, H.P. We affirm.

Mother does not challenge any of the family court's findings, which reveal the following facts. Mother grew up in North Carolina and was living there when H.P. was born in April 2014. Mother identified a Michael Brown as H.P.'s father, but the Department for Children and Families (DCF) was unable to locate him, and thus he received no notice of, and did not participate in, these proceedings.[*] The court found that mother was not credible in professing not to know even the most basic facts about him.

Mother came to Vermont with H.P., purportedly to escape the father's abuse. She had no family or friends in Vermont, and no housing or employment upon her arrival. She was able to access various services and found temporary housing in hotels and later at a shelter. During her interactions with social service networks, concerns arose about her mental health and ability to keep H.P. safe.

DCF filed a petition alleging that H.P. was a child in need of care or supervision (CHINS) in November 2014 after mother experienced a significant mental health crisis and failed to access recommended treatment. H.P. was in DCF custody for two days before the court approved a conditional custody order (CCO) under which the child was returned to mother's care subject to conditions, including that mother access mental health services, engage in a mental health evaluation, work with service providers, and schedule a pediatric appointment for H.P.

---

[*] The superior court docket entries indicate that on November 24, 2014, Michael Brown was entered as a party in the case and that on July 2, 2015, DCF filed separate petitions to terminate both mother's and father's parental rights. In the termination order on appeal, the court terminated only mother's parental rights and transferred custody of H.P. to DCF without limitation as to adoption. The record does not indicate that Michael Brown's parental rights were ever terminated; nor does the record indicate, however, that Michael Brown's paternity as to H.P. was ever determined or that he ever voluntarily acknowledged that he was H.P.'s parent.

Approximately one week after the CCO was issued, mother informed her DCF case worker that she would be losing her housing within a week or so. Around the same time, DCF became aware that mother had been charged with disorderly conduct as the result of an altercation she had with two minors and that she had left H.P. at the shelter in the care of a man she had just met.

As mother's housing crisis loomed, mother announced to her DCF case worker that she planned to return to North Carolina with H.P. The case worker reminded mother that she could not take the child out of state with a juvenile case and criminal charges pending unless she obtained permission from the court. In early December 2014, DCF sought an emergency hearing upon learning that mother had not yet completed a mental health evaluation, had not followed up on housing referrals provided by her case worker, and had falsely reported to the case worker that she had scheduled a pediatric appointment for H.P.

Mother assured her case worker that she would attend the emergency hearing, but instead she fled the state with H.P. Law enforcement officers located mother and H.P. in a Connecticut hotel two days later. Social workers brought H.P. back to Vermont and placed her with foster parents, with whom she has remained ever since. Mother went to North Carolina and remained there for over six months, not returning to Vermont until late June 2015. During her absence, mother had no contact with H.P. Mother's DCF case worker spoke to mother intermittently and advised her to return to Vermont, where she could have supervised visits with H.P. Mother falsely informed her case worker that she had secured housing in North Carolina. The case worker also discovered that mother's new boyfriend had a criminal record for promoting prostitution, that mother's picture appeared on web sites offering commercial sex services, and that the phone number next to mother's picture was the same phone number the case worker was using to contact mother.

During mother's stay in North Carolina, her former counsel sought to have jurisdiction over the case transferred there, but at a jurisdictional teleconference the North Carolina court declined to assert jurisdiction. Mother participated in the proceeding and was aware of the ruling, but nonetheless remained in North Carolina for another three months before returning to Vermont.

In April 2015, DCF prepared an initial case plan with concurrent goals of reunification or adoption. The plan called for mother, among other things, to complete a mental health evaluation, complete a substance abuse evaluation, sign releases, engage in family time coaching, maintain safe housing, attend shared parenting meetings, and refrain from criminal charges and illegal activity.

On June 18, 2015, DCF filed a disposition case plan. The case plan recommended termination of parental rights and adoption as the only goal, given mother's lack of contact with H.P. during the previous six months. The plan recommended the same services as the initial plan. A disposition hearing was held on June 24, 2015. Mother did not attend the hearing or participate by telephone. Mother's counsel, however, relayed mother's request that DCF consider a placement with her brother's girlfriend. DCF learned that neither mother's brother nor his girlfriend had independent housing, and mother later requested that DCF no longer consider the placement.

Mother returned to Vermont on June 29, 2015. That same day, during a status conference, she agreed to undergo a mental health evaluation. She also stated that she had found employment, which proved to be untrue. Approximately one week later, mother had a substance abuse

assessment, and the clinician determined that mother did not meet the criteria for substance treatment.

On July 2, 2015, DCF filed a petition to terminate mother's parental rights. Among other things, DCF was concerned that mother was continuing to engage in commercial sex in Vermont. When mother's case worker googled mother's telephone number, there was a link to escort service web sites.

In October 2015, mother began weekly counseling, but for several months did not sign a release permitting DCF to confirm the counseling. Ultimately, she provided a release that would allow DCF to confirm her attendance but not her progress. Also beginning in October 2015, mother began supervised visits, twice a week for two hours, with H.P. At that point, mother had not seen the child in ten months. Mother maintained good attendance at the visits, which went well. Although the visits went well, they never progressed to overnight or unsupervised visits because of what the court found to be DCF's legitimate concerns with mother's history of deceit and her lack of insight into the danger of leaving H.P. with persons she does not know well and allowing the child to be in the presence of dangerous individuals.

In March 2016, mother was charged with simple assault and disorderly conduct by fighting. Among the individuals involved in the incident that led to the charges was her boyfriend, whose criminal record included five felony convictions and fifteen misdemeanor convictions. She entered a not guilty plea and was released upon conditions. The charges remained pending at the time of the termination hearing. Mother had not obtained safe and adequate housing by the time of the hearing.

The termination hearing was held on May 18, 2016. Following the hearing, the family court terminated mother's parental rights after examining each of the best-interest criteria set forth in 33 V.S.A. § 5114(a). Regarding the first factor concerning the child's relationships with persons who could affect her best interests, the court found that H.P. and mother have a loving relationship despite mother's absence in the child's life, but that the child had bonded with her foster parents. Regarding the second factor concerning the child's adjustment to her home and community, the court found that H.P. had lived with her foster family for two-thirds of her life, which the court called "a tremendously significant time given the age and development of the child." Regarding the critical third factor concerning the likelihood of mother being able to resume her parental duties within a reasonable period of time, the court found that although mother had recently engaged in several of the recommended services, there was little evidence that she had made actual progress towards reunification, and that she continued to lead a highly unstable life, as evidenced by her lack of housing and association with dangerous individuals. The court further found that mother continued to lie to DCF and the court about basic facts in her life, which, among other things, impeded an expansion of parent-child contact. Regarding the fourth factor concerning whether mother had played and continued to play a constructive role in the child's life, the court found that although mother had demonstrated love and affection for H.P., she absented herself from the child's life for a lengthy period, during which time the child bonded with her foster parents. Based on these findings and conclusions, the court granted DCF's termination petition.

On appeal, mother argues that the family court erred by failing to engage in a forward-looking analysis in determining whether she would be able to resume her parental duties within a reasonable period of time from the perspective of the child. We find no merit to this argument, which ignores many of the family court's findings supporting its conclusion that mother will not be able to resume her parental duties within a reasonable period of time. Mother is correct that a

reasonable-period-of-time analysis must be forward looking, but that does not mean that past events or a parent's present circumstances are irrelevant as to whether or when the parent will be able to resume parental duties. In re B.M., 165 Vt. 331, 337-38 (1996). What constitutes a reasonable period of time as measured from the child's perspective includes consideration of the child's age, the length of time the child has been out of the home, and the child's need for stability and permanence. In re J.S., 168 Vt. 572, 574 (1998) (mem.). In this case, while mother belatedly began to comply with DCF's case plan, the evidence amply supports the court's finding that at the time of the termination hearing mother had shown few signs of making actual progress towards ameliorating the risks that led to H.P. being taken into state custody. Specifically, the evidence showed that mother continued to lead a highly unstable life, was without safe and adequate housing, had been charged with new criminal offenses, was associating with dangerous individuals, continued to lie to DCF about basic facts of her life, continued to be in denial as to why H.P. had been taken into state custody, refused to sign a release that would reveal her progress in mental health counseling, and had not progressed beyond limited supervised visitation with H.P because of her lack of honesty with DCF and the court. In short, despite mother's participation in some services, she continued to lead an unstable life in which she could not assure H.P.'s safety. Meanwhile, H.P. had been in state custody for two-thirds of her young life—eighteen months— without mother making any significant progress towards reunification. The record amply supports the court's termination order and, specifically, its conclusion that mother would not be able to resume her parental duties within a reasonable period of time as measured from H.P.'s perspective.

Although the record supports the court's termination order as to mother, it is inadequate for this Court to determine whether the State complied with the minimum statutory and due process requirements for notice to the father. See 33 V.S.A. § 5111 (regarding identification of and notice to noncustodial parent); see also In re C.W., 148 Vt. 282, 288 (1987) (reversing termination order as to father because record did not indicate State made reasonably diligent efforts to locate him, as required by demands of procedural due process). Thus, the record does not support the court's order that custody and control of H.P. be transferred to DCF without limitation as to adoption, thereby requiring a remand for additional findings or further proceedings.

The superior court's order terminating mother's parental rights is affirmed. The court's order transferring custody to DCF without limitation as to adoption is reversed, and the matter is remanded for additional findings or further proceedings as necessary to address whether father has any remaining rights that must be considered before H.P. is freed for adoption.

BY THE COURT:

_____
John A. Dooley, Associate Justice

_____
Beth Robinson, Associate Justice

_____
Harold E. Eaton, Jr., Associate Justice

4