# In re C.L. and H.L.

[563 A.2d 241]

No. 88-113

Present: **Allen, C.J., Peck, Gibson and Dooley, JJ., and Barney, C.J. (Ret.), Specially Assigned.**

Opinion Filed April 14, 1989

Motion for Reconsideration Denied May 4, 1989

*Jeffrey L. Amestoy, Attorney General,* Montpelier, and *Barbara L. Crippen, Special Assistant Attorney General,* and

*Michael O. Duane, Assistant Attorney General,* Waterbury, for Plaintiff-Appellee.

*Michael Rose,* St. Albans, for defendant-appellant.

**Gibson, J.** Respondent J.L., mother of the minor children C.L. and H.L., appeals from the trial court's order terminating her residual parental rights and transferring custody of the children to the Department of Social and Rehabilitation Services (SRS) without limitation as to adoption. We affirm.

SRS's first involvement with this family came in 1982 when C.L., the elder child, was three months old. At that time, SRS received a report that C.L. had been left in the care of the reporter and that respondent's whereabouts were unknown. After this incident, a voluntary protective services case was opened, with goals to assist respondent in obtaining substance abuse counseling, education, stable housing and parental training.

In December of 1983, eight months after H.L. was born, SRS filed a petition with the Franklin District Court under 33 V.S.A. § 645 alleging that both C.L. and H.L. were children in need of care and supervision (CHINS). After a hearing on the merits, the chilren were adjudicated CHINS on December 21, 1983. A disposition hearing was held the following month, and on January 27, 1984 the court issued an order transferring legal custody and guardianship of the children to SRS. Respondent did not appeal either decision.

Disposition review hearings pursuant to 33 V.S.A. § 658 were held on May 28, 1985 and on October 10, 1986. SRS's recommendation at the first review was to continue the case plan already in place and, if all went well, it would petition for discharge from custody. Its recommendation at the October 10, 1986 review was to extend the case plan until December in order to give respondent additional time for compliance with its goals. On both occasions, the court concurred with the recommendations of SRS and continued custody and guardianship of the children with the agency.

On June 4, 1987, SRS filed a petition pursuant to 33 V.S.A. § 659 to modify the original disposition order to transfer respondent's residual parental rights to the Commissioner of SRS without limitation as to adoption. After a hearing on July 31st, the court issued an order on January 14, 1988 granting the requested

modification and terminating respondent's parental rights in C.L. and H.L.

Respondent presents numerous claims of error on appeal. First, she alleges that the trial court failed to make an explicit jurisdictional finding of "changed circumstances" as required in modification petitions under 33 V.S.A. § 659, and that the evidence does not support such a finding. Next, she contends that the court filed to use the correct "clear and convincing evidence" standard of proof in reaching its determination. She also states that the court failed to make any findings of abuse or neglect of the children, erroneously relied on the SRS case plan in measuring material fitness, placed undue emphasis on whether the children had bonded with respondent, and made insufficient findings concerning the children's grandmother (respondent's mother), a "significant person" in their lives. Finally, respondent assigns as error a number of the court's findings, claiming that they were speculative, unsupported by the evidence, or irrevelevant. We shall address each of these claims in turn.

## I.

### A.

Section 659(a) of 33 V.S.A. provides that "[a]n order of the court may also be amended, modified, set aside or terminated by that court at any time upon petition therefore by a party or on its own motion on the ground that changed circumstances so require in the best interests of the child." Respondent claims that since the trial court failed to make an explicit finding of changed circumstances, it did not meet the jurisdictional prerequisite for modification. In addition, she contends that in ascertaining whether circumstances had changed, the court could examine only the time period since its last judicial review in October of 1986. In other words, she claims that the court was precluded from reviewing how circumstances may have changed since the original disposition order in January of 1984.

■ This Court has never held that the absence of an explicit finding as to changed circumstances requires the reversal of a modification order pursuant to 33 V.S.A. § 659. Instead, when confronted with cases in which the statutory factors outlined in 33 V.S.A. § 667 (best interest of the child) were not specifically enumerated, we have stated that it was "not necessary, however,

that the court couch its findings in the precise language of [the statute], as long as it is evident that the court fully considered" these criteria. *In re G.V.*, 136 Vt. 499, 502, 394 A.2d 1126, 1128 (1978); see also *In re E.G.*, 139 Vt. 171, 174, 423 A.2d 1197, 1198 (1980) (enumeration of § 667 factors was "unnecessary formality"). While we agree that it is the better practice to enunciate clearly that changed circumstances have been found, the findings in this case are replete with facts sufficient to meet the required standard. Inasmuch as the children's best interests are of paramount importance in this kind of proceeding, we will not reverse the trial court's disposition on a technicality.

A change in circumstances sufficient to modify a disposition order was found on almost identical facts in *In re Certain Neglected Children*, 134 Vt. 74, 349 A.2d 228 (1975). There, three years had passed since the initial order transferring custody to SRS, during which time, in spite of all the services provided the mother, she had not been able to effect changes in her living habits and style. "[T]he passage of three years' time here, coupled with no improvement in parental capacity to care properly for her children, constitutes a change of circumstances sufficient to support the transfer of residual parental rights to the State." *Id.* at 77, 349 A.2d at 230.

This lack of improvement, sometimes referred to as "stagnation" or "deterioration," has often served as the basis for a finding of changed circumstances. See, e.g., *In re D.P.*, 147 Vt. 26, 30-31, 510 A.2d 967, 970 (1986) ("The passage of time without any improvement for the better — 'stagnation in parental capacity' — may establish a material change in circumstances.") (quoting *In re Certain Neglected Children*, 134 Vt. at 77, 349 A.2d at 230); *In re G.V.*, 136 Vt. at 502, 394 A.2d at 1128 (petitions to modify an order to terminate parental rights proceed on theory " 'that natural parents have an obligation to correct their living circumstances for the better . . . and that there has been a deterioration or that there exists stagnation coupled with a prospective inability for improvement' ") (quoting *In re J. & J.W.*, 134 Vt. 480, 484, 365 A.2d 521, 524 (1976)).

Here, the trial court found that respondent "made no progress [with substance abuse counseling] and her condition did not improve," that after being warned that her parental rights might be terminated, she "still ha[d] not made any progress," but instead her condition "deteriorated." While not the explicit statements of

changed circumstances envisioned by respondent, these findings constitute changed circumstances sufficient to support modification of the disposition order under 33 V.S.A. § 659.

In *In re G.V.*, we held that changes occurring prior to the most recent court order could not be used as the *sole* basis for a finding of changed curcumstances, but that the previous time period could be used in conjunction with the more recent one to make such a determination. 136 Vt. at 503, 394 A.2d at 1128. Thus, respondent's second argument on this point fails as a matter of law.

### B.

■ Our next inquiry is whether the trial court's findings are properly supported by the evidence. The "clearly erroneous" standard of review set forth in V.R.C.P. 52(a) has been adopted in juvenile cases and thus governs this review: findings of fact will stand if there is any credible evidence supporting them. *In re H.A.*, 148 Vt. 106, 109, 528 A.2d 756, 757 (1987); *In re T.L.S.*, 144 Vt. 536, 540, 481 A.2d 1037, 1039 (1984). A review of the pertinent facts follows.

The evidence showed that prior to the original disposition hearing in January of 1984, SRS prepared a disposition report as required by 33 V.S.A. § 655. Included in the disposition report were a case plan and a recommendation that custody of the children be transferred to SRS for six months pending a new review. See 33 V.S.A. § 655(b)(4) (recommendation and case plan to be included in SRS disposition report).

The SRS case plan in early 1984 provided that respondent was to begin substance abuse counseling and undergo residential treatment programs, if eligible, then return to the community and seek individual therapy, parenting skills counseling, and educational/employment counseling. Evidence was presented that these initial goals were modified only slightly as time passed; the modified aims included continued substance abuse and parenting skills counseling, and an independent living situation, including employment and residence outside her mother's home. In addition, as discussed in more detail below, the case plan was changed to include the goal that respondent avoid further confrontations with the law.

In light of these goals, evidence was presented that respondent failed to apply herself to the substance abuse counseling arranged for her. She successfully completed a detoxification program, but

was asked to leave one residential program because of suspected drinking and had to leave another after she hit a fellow participant. The alcoholism counselor who worked with her from late 1986 through early 1987 stated that she kept only two appointments with him. She herself stated that she drinks only on occasion now, that despite her background she is capable of controlling her substance abuse, and that she feels she does not need more affirmative intervention.

Respondent's sponsor in the Parents Anonymous program testified that she had participated regularly for approximately eighteen months, beginning in December of 1983 (the time of the CHINS merits hearing). The sponsor noted, however, that for the year prior to the modification hearing, respondent attended only 25% of the weekly meetings. The sponser was unable to state that respondent's parenting skills had changed.

Her employment history, about which respondent as well as several of her caseworkers testified, is best described as sporadic. Respondent has held numerous jobs since the original disposition hearing for periods ranging from a few days to three months in duration. From late 1986 into early 1987 (which included time since the last judicial review in October 1986), she worked for four different employers. She lost her first job after three days when she told them she would be fifteen minutes late because she was expecting a call from her attorney. She quit after three or four days working on a cleaning crew at IBM because she was not able to wear the required face mask due to nosebleeds; and her employment at the third job lasted only three months. She worked for a fourth employer on two separate occasions: the first time for three months, after which she quit because she was "physically tired," and the second time for a shorter period, when she left because she "couldn't take it." In between those last two periods of employment she obtained a job at Burger King but never actually went to work because it took several weeks to process her and get her a uniform. In the last five years, respondent has worked a total of approximately thirteen or fourteen months.

Prior to the initial disposition hearing in January of 1984, respondent had had little involvement with the law. Beginning at about that time, however, this changed. Between January and July of 1984 she was arrested and convicted on charges of unlawful mischief, simple assault on a police officer and disorderly conduct. In late 1985, she was convicted twice of noise in the night-

time. In March of 1986, she was sentenced to forty-five days in prison after being convicted of aggravated assault. In May of 1986, SRS held a case plan review at its offices at which respondent was present. Given her lack of progress and continued involvement with the law, she was told that SRS would consider filing a petition to terminate her parental rights unless she made progress with the case plan, which now included the goal of avoiding further problems with criminal behavior. Despite this, in less than two months (June of 1986), respondent was again in prison for simple assault. She was convicted that September of retail theft, in November of violating her probation, and in December of inciting a felony. The latter two incidents occurred after the October 1986 judicial review, as did her arrest in April of 1987 on charges of assault and robbery, for which there was no disposition at the time of the termination hearing at issue.

Respondent claims that the court erred in finding there was no change in her patterns of drinking, criminal activity, or unemployment since February of 1987. Much of her argument is based on her claim that the testimony supporting the court's findings was inadmissible hearsay. She also claims that the court's finding that the children were presently in "preadoptive placement" was supported only by an ex parte letter sent by SRS subsquent to the hearing.

■ Juvenile proceedings under chapter 12 of 33 V.S.A. are conducted in bifurcated manner. First, a merits hearing is held to determine if the children are CHINS. Inadmissible hearsay, if objected to, may not be considered at this stage. See, e.g., *In re M.P.*, 133 Vt. 144, 146, 333 A.2d 116, 118 (1975). Once a CHINS finding is made, the court then holds a disposition hearing, at which

> all information helpful in determining the questions presented, including oral and written reports and including the [SRS] disposition report . . . may be admitted and may be relied upon to the extent of its probative value, even though not competent in the initial hearing on the petition.

33 V.S.A. § 655(d). A modification hearing conducted under 33 V.S.A. § 659(a) is in the nature of a further disposition hearing. See, e.g., *In re Certain Neglected Children*, 134 Vt. at 76-77, 349 A.2d at 230 (petition to modify disposition order three years subsequent to original CHINS adjudication and disposition hearing

resulted in "disposition hearing on removal of residual parental rights"). Thus, hearsay evidence may be used by the court in making its determination whether to change a child's placement.

Respondent cites our recent opinion in *In re R.M.,* 150 Vt. 59, 549 A.2d 1050 (1988), in support of her contention that the alleged hearsay tainted the entire proceedings. That case, however, involved a *merits,* not a disposition, hearing. *Id.* at 65, 549 A.2d at 1054 (determining "whether the hearsay testimony . . . was fatal to the merits proceedings.").

Respondent also relies on language from *In re Y.B.,* 143 Vt. 344, 348, 466 A.2d 1167, 1169 (1983), in which we stated that "hearsay allegations in the disposition report could not be used as a factual basis for determining parental unfitness . . . ." That language must be considered in the factual context presented in *In re Y.B.* In that case, the initial CHINS finding had been by stipulation of the parties with the understanding that the parent was not admitting fault or responsibility for any of the harms alleged in the CHINS petition. At the later disposition hearing, SRS introduced into evidence its disposition report, over the parent's objection, but failed to call any witnesses as to her unfitness as a parent. The mother, on the other hand, called three witnesses (including herself) whose testimony indicated that there was room for "guarded optimism" that a family reunification was possible. Given the compelling nature of parental rights and the Legislature's goal that, whenever possible, the family unit should remain together, 33 V.S.A. § 631(a)(3), the *Y.B.* Court concluded that there was no clear and convincing proof of parental unfitness.[1]

This case presents different circumstances which warrant a different result. The disposition report was not the court's sole basis for its finding of parental unfitness. In determining that respondent was "unable to resume her parental duties within a reasonable time period," see 33 V.S.A. § 667(3), the trial court relied on

---

[1] In *In re R.L.,* 148 Vt. 223, 531 A.2d 909 (1987), we further clarified our holding in *In re Y.B.* We stated that under *Y.B.* hearsay evidence may not be relied upon in determining parental unfitness where a proper objection has been made, which respondents had failed to do. *In re R.L.,* 148 Vt. at 228, 531 A.2d at 912. This statement should not be construed as unduly broadening *Y.B.*'s holding to the proposition that hearsay evidence may never be used in determining parental unfitness. Instead, it is clear from the facts of *Y.B.* that where a timely objection is made, hearsay evidence *alone* may not be used as a basis for a finding of parental unfitness.

the testimony of eight witnesses called by the State, including the mother's probation officer and SRS caseworkers. Clearly, hearsay was not the only basis for the trial court's finding of parental unfitness.

Having reviewed the record, we conclude that there is credible evidence supporting the trial court's findings and its conclusion that respondent's behavior had showed no change and had, in fact, deteriorated both since the initial disposition and since the most recent judicial review in October of 1986. Thus, respondent's argument that no "changed circumstances" existed so as to preclude modification of the original disposition order fails.

## II.

Next, respondent claims that because the trial court failed to state it was using the "clear and convincing evidence" standard of proof mandated in such cases by *Santosky* v. *Kramer,* 455 U.S. 745 (1982), its determination should be reversed. We disagree.

■ This Court has not heretofore required an explicit statement by the trial courts as to the standard employed in parental termination cases, although it has reiterated that the proof must be "convincing." See *In re H.A.,* 148 Vt. at 109, 528 A.2d at 757; *In re L.S.* 147 Vt. 36, 38, 509 A.2d 1017, 1019 (1986); *In re B.L.,* 145 Vt. 586, 591, 494 A.2d 145, 148 (1985). Instead, we have on several occasions examined the language used by the trial court in order to determine whether the proper "clear and convincing evidence" standard had been applied. See, e.g., *In re D.P.,* 147 Vt. at 32, 510 A.2d at 970-71.

The language in this case closely resembles that used in *In re C.W.,* 148 Vt. 282, 532 A.2d 566 (1987). There, the trial court found that it was a "clear case" for termination of parental rights, and that there was "no likelihood that the mother [would] be able to resume parental duties within a reasonable period of time." We held that notwithstanding the court's omission of the actual phrase "clear and convincing," those findings indicated that the correct legal standard had been applied. *Id.* at 284-86, 532 A.2d at 568-69.

Here, too, the trial court stated that it was "convinced that [the mother] will be unable to resume her parental duties within a reasonable time period." We find there to be no significant difference

between this language and that at issue in *In re C.W.* and thus conclude that the proper standard was used.

We agree with respondent that the better practice is for the trial court to specify in its order that it is using the "clear and convincing evidence" standard of proof when adjudicating these cases. That way there is no margin for error and this Court is saved the burden of searching the record to determine whether the correct standard was applied. But in a case such as this, a conflict inevitably arises between the interests of the children in having the matter finalized and the mother's desire that she be accorded due process throughout the proceedings. Having expressed our decided preference that trial courts enunciate the standard of proof with specificity, we will nevertheless refuse to overturn the court's determination on a claimed point of error that places form over substance.

## III.

Respondent contends that the trial court's failure to make findings regarding abuse and neglect necessitates reversal. Such findings are not required, however, at a disposition hearing, but only at the original merits hearing. See *In re P.F.,* 133 Vt. 64, 67, 329 A.2d 632, 634 (1974) ("legislative scheme does not appear to hinge on permanency of abuse" since "[t]he welfare of the child is the paramount concern"). In a hearing pursuant to 33 V.S.A. § 659, in which a modification of a disposition order is requested, only two requirements are contained in the statute: that there be a showing of "changed circumstances" which require modification "in the best interests of the child." We have already had occasion to address the "changed circumstances" provision.

In order to determine the best interests of the children, the trial court was not required to make further findings as to continued abuse or neglect of the children. Instead, the four factors set forth at 33 V.S.A. § 667 come into play:

> (1) The interaction and interrelationship of the child with his natural parents, his foster parents if any, his siblings, and any other person who may significantly affect the child's best interests;

> (2) The child's adjustment to his home, school, and community;

 (3) The likelihood that the natural parent will be able to resume his parental duties within a reasonable period of time; and

 (4) Whether the natural parent has played and continues to play a constructive role, including personal contact and demonstrated love and affection, in the child's welfare.

Respondent contends that the trial court placed undue emphasis on whether or not the children had "bonded" to her.[2] It is clear, however, that it was just such a parent-child "interrelationship" the Legislature envisioned when it drafted § 667(1) and (4). Similarly, the trial court took into account the relationship between the children and their maternal grandmother.[3] The fact that the court made only two findings regarding the grandmother does not, however, indicate anything more than its decision of how much weight to give the evidence of that relationship. The grandmother's rights were not on trial at this hearing.

 ■ Respondent also argues that the trial court failed to consider whether the SRS case plan was valid. The validity of the plan was not at issue in this case, however. The plan, originally proposed by SRS pursuant to 33 V.S.A. § 655(a) immediately prior to the disposition hearing in 1984, served without objection by respondent as one basis for the initial disposition. Likewise, respondent's progress vis-a-vis the plan has been used by the trial court at its periodic reviews without objection. It appears from the record that the plan was not formally admitted into evidence at the modification hearing, as provided for in 33 V.S.A. § 655(d). This Court has recently held, however, that a failure to introduce an SRS case plan formally into evidence does not necessarily preclude its use where such use was anticipated and its contents were

---

[2] The court stated in Finding 24 that:
> H.L. and C.L. just prior to this hearing have not bonded to [respondent]. The children do not have a clear understanding who [she] is. The children have had 5 different placements since 1983 which include placements with their mother, their grandmother and with foster families. The children have been in foster care on a continual basis since November 1985.

[3] Finding 6 states that "[respondent's] mother . . . was the primary caretaker of the newborn child C.L."
 Finding 9 was that "[respondent] found no housing away from her mother, and did not obtain employment. Generally it was chaos at her mother's house. [Respondent] was considering turning custody of C.L. over to her mother because of her instability."

known in advance, especially in the absence of an objection at the hearing. *In re T.D.*, 149 Vt. 42, 44, 538 A.2d 176, 177 (1987); *In re R.L.*, 148 Vt. 223, 226, 531 A.2d 909, 911 (1987). Those same circumstances obtain in this case.

## IV.

Respondent's final claims of error are that certain findings of fact are either speculative, unsupported or erroneous. Specifically, she contends that one finding — that she "often" left C.L. with people without telling them when she expected to return — was based on hearsay. There was, however, no objection to the evidence, and the issue was thus not preserved on appeal. *In re R.L.*, 148 Vt. at 226, 531 A.2d at 911.

Next, she argues that the finding that respondent "admitted to an alcohol and drug problem" constitutes merely a recitation of the evidence, not a true finding of fact. We cannot agree. There was ample testimony from the State's witnesses that respondent had throughout their involvement with her admitted to abusing alcohol. It was not improper for the court to find this admission to be factual.

Respondent also argues that two findings were unsupported by the evidence: that she was evicted from an apartment, and that both children were in preadoptive placement and "responding well" to their foster parents. After reviewing the record, we conclude that neither of these findings is clearly erroneous, V.R.C.P. 52(a); rather, they both indicate the trial court's response to the conflicting testimony presented at the hearing.

Respondent avers that the latter finding may have been based on an ex parte communication from SRS to the court subsequent to the hearing in which SRS stated that "there is no question about the foster parents' ability to care for the children," and claims that this taints the entire finding. We disagree. At the hearing, the foster mother testified that the children had been with them for almost three months and that she and her husband considered themselves "a potential long-term resource" for the children. Given the nature of the hearing — one to terminate parental rights in order to allow the children to be adopted — it was clearly reasonable for the trial court to consider this as evidence

of preadoptive placement. Since this finding is fully supported by evidence properly admitted at the hearing, we will not disturb it.

*Affirmed.*