2011 VT 132

In re Eric J. MORIN

[45 A.3d 39]

No. 10-426

¶ 1. November 28, 2011. This case raises the question of whether a court that grants post-conviction relief (PCR) is authorized to remand the case to the criminal court and to reinstate charges that were dismissed as part of a plea agreement. Petitioner argues that the State, not the court, must be the one to reinitiate criminal prosecutions. We conclude that certain authority is contained within the court's power to vacate judgments and that any exercise of power beyond this authorization here was harmless. Therefore, we affirm.

¶ 2. On August 1, 2008, the State charged petitioner Eric Morin with domestic assault. The case was assigned docket number 3113-8-08 Cncr. He was released on bail. On September 24 of the same year, the State charged Morin with driving under the influence (DUI) and operating a vehicle with a suspended license. The State also separately charged him with four counts of violating his conditions of release. These charges received separate docket numbers, 3947-9-08 Cncr and 3948-9-08 Cncr, respectively.

¶ 3. The State and Morin negotiated a plea agreement on December 8. Pursuant to this agreement, Morin pled guilty to all of the September 24 charges — DUI, operating a vehicle with a suspended license, and violating his conditions of release. In consideration for Morin's guilty plea, the State dismissed the pending domestic assault charge in docket number 3113-8-08 Cncr. On February 3, 2009, Morin was sentenced to eighteen months to five years on the DUI and to lesser concurrent sentences on the other charges.

¶ 4. In the spring of 2009, Morin petitioned for PCR, and on August 12, 2010, the Chittenden Superior Court, Civil Division, granted the petition for PCR. The superior court determined that the criminal court had failed to elicit an adequate factual basis for the guilty plea during the colloquy, in violation of Vermont Rule of Criminal Procedure 11. That determination is not an issue on appeal.

¶ 5. After the superior court determined that PCR was appropriate, it ordered Morin to submit a proposed judgment order. Morin's proposed order stated simply that "[the] convictions and sentences entered in Docket Nos. 3947-9-08 Cncr and 3948-7-08 [sic] Cncr are hereby VACATED." The State objected that the proposed order would deny it the benefit of the plea agreement, and it proposed an order reinstating the former charges as well as the former bail and release conditions. After a string of competing submissions, the court entered a judgment order that stated:

> The convictions based on [petitioner's] guilty pleas in Dockets 3947-9-08 CnCr and 3948-9-08 CnCr are hereby vacated. The case therefore returns to its pre-plea status, including the reinstatement of the charge in Docket 3113-8-08 CnCr, which was dismissed as part of the plea agreement. The case is remanded to the Chittenden Criminal Division for further proceedings consistent with this judgment.

Morin appeals from this judgment order, objecting both to the reinstatement of the dismissed charges and to the remand to the criminal court.

¶ 6. The crux of Morin's argument is that the PCR statute, 13 V.S.A. § 7133, authorizes only a limited set of possible actions by a court. That section states:

If the court finds that the judgment was made without jurisdiction, or that the sentence imposed was not authorized by law or is otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to make the judgment vulnerable to collateral attack, it shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or her or grant a new trial or correct the sentence as may appear appropriate.

*Id.* This provision is taken verbatim from the federal PCR statute, 28 U.S.C. § 2255. Morin reads the final disjunction of options as providing four possible actions for a court granting PCR, only the first of which would be appropriate for this case. Thus, Morin argues that the court was constrained by statute to vacate and set aside the judgment and to discharge him. To do more than this, he argues, would be for the court to appropriate the executive branch's authority to initiate prosecutions.

¶ 7. There are two separate issues raised by this appeal: the authority to remand and the authority to reinstate dismissed charges. With regard to the first of these, we conclude that § 7133 does grant a PCR court the authority to remand a case. The power to remand is essentially connected with the power to vacate. See *In re Bowers*, 130 Vt. 314, 316, 292 A.2d 813, 814 (1972) (holding that PCR court "impliedly vacated" judgment by remanding the case). When a court vacates and sets aside a judgment, that eliminates the judgment and thereby returns the case to its status before the judgment was made. In many circumstances, this will leave a case in a procedural posture such that it requires further proceedings in the original court. In other contexts, we have read statutory authorization to review a judgment as implicitly containing the power to remand. See *In re D'Antonio*, 2007 VT 100, ¶ 8, 182 Vt. 599, 939 A.2d 493 (mem.) (interpreting statutory authorization in 3 V.S.A. § 3091 for a reviewing court to "reverse or modify" agency decisions to include the power to remand); *Burroughs v. West Windsor Bd. of Sch. Dirs.*, 141 Vt. 234, 238, 446 A.2d 377, 380 (1982) (interpreting the authorization in V.R.C.P. 75 for a court to "affirm, reverse, or modify the decision under review" to include the power to remand).

¶ 8. For this reason, we explicitly held in *State v. Morse* that § 7133 authorizes a court to remand. 126 Vt. 314, 317, 229 A.2d 232, 235 (1967). In that case, the sentencing occurred without the statutorily required written presentence report. The PCR court was therefore in a position to invalidate the sentence that had been issued, and this invalidation made remand appropriate because the PCR court was not in a position to amend the sentence. *Id.* at 316, 229 A.2d at 234. We concluded:

> [T]he remand from county court to municipal court [was not] improper. . . . After vacating the old sentence, the county court could, under the statute, appropriately remand for a rehearing . . . . Basically, this is no new proceeding, but a continuation of the original matter for purposes of correction. The error was asserted by the petitioner and the matter has been reopened for curative action at his demand.

*Id.* at 317, 229 A.2d at 235; see also *Coyle v. Hofmann*, 2009 VT 46, ¶ 10, 186 Vt. 525, 974 A.2d 616 (mem.) (assuming that § 7133 authorized remand in holding that the PCR court was not required to remand for resentencing); *In re Bowers*, 130 Vt. at 316, 292 A.2d at 814 (affirming

PCR court's order to remand as impliedly a form of ordering the judgment vacated). Although *Morse* involved a remand for further proceedings regarding sentencing and this case involves a remand for further proceedings regarding guilt or innocence, this difference is immaterial. Moreover, § 7133 explicitly authorizes a PCR court to "grant a new trial," which by necessity involves remanding for further proceedings concerning guilt or innocence. Morin argues that this language is inapplicable to a judgment based on a negotiated plea because there was no trial. We reject that reading of the statute. There is no reason that the authorization should be different because the initial determination was arrived at by plea rather than by trial. We thus reaffirm the conclusion that § 7133 authorizes a PCR court to remand a case where the relief granted would call for it.

¶ 9. The second issue raised — to what extent a PCR court may reinstate previously dismissed charges, including charges in a separate case — is a somewhat more open question. A number of decisions conclude that a state can move to reinstate charges that were dismissed pursuant to a plea agreement when the plea in question is invalidated or withdrawn. See, e.g., *People v. McCutcheon*, 368 N.E.2d 886, 888 (Ill. 1977) ("[D]efendant's . . . successful appeal of his guilty plea placed him in the position he held prior to the plea or in the position he would have held had he been allowed to withdraw his plea. The appellate court's mandate to plead anew encompassed starting the process over. Accordingly, there was nothing to prevent the State from reinstating the greater charge."). In most of these cases, however, it is the state that affirmatively acts to reinitiate the dismissed charges, which is what Morin contends was lacking in this case. Still, there are some decisions that suggest that a PCR court may itself reinstate charges. See, e.g., *State v. Pohlhammer*, 254 N.W.2d 478, 482 (Wis. 1977) ("Invalidating the plea invalidates the plea bargain. Since the amended information was conditioned upon defendant's agreement to plead guilty, and the information was accepted in lieu of the prior information, this case is returned to the trial court in the same posture it occupied prior to the [plea agreement] hearing."). Albeit in dicta, this Court's *In re Jones* decision accepted the premise that charges dismissed under a subsequently voided plea agreement were reinstated — though in the reinstated charge there was not in a separate case. 2009 VT 39, ¶ 15, 185 Vt. 638, 973 A.2d 1198 (mem.) ("The superior court . . . recognized that, by voiding the plea agreement, the original charge of kidnapping was reinstated.").

¶ 10. We do not need to decide this question as we can dispose of this case by assuming arguendo that the State should be the one to reinitiate the dismissed charges — either by recharging or by making a motion to reinstate the charges with the court that dismissed them. See *United States v. Bounds*, 985 F.2d 188, 191 (5th Cir. 1993) ("[C]ases do suggest that the government ordinarily should reindict or move to reinstate the dismissed charges. We will assume, without deciding, that the government had to move to reinstate the charges."), *abrogated on other grounds by Edwards v. United States*, 523 U.S. 511, 513 (1998). Even if the State was required to reinitiate the dismissed criminal charge, petitioner has not alleged any way in which he has been prejudiced by the failure of the State to do so. In his brief, he explicitly disavows any contention that he cannot be reprosecuted. In particular, he does not assert any statute of limitations defense of the type that has brought this issue to the fore in some federal circuit court cases. See *United States v. Midgley*, 142 F.3d 174, 176-80 (3d Cir. 1998) (refusing to allow the government to reinstate charges dismissed pursuant

to a plea agreement where the guilty plea was vacated post conviction under § 2255 and the statute of limitations had run in the meantime); *United States v. Podde*, 105 F.3d 813, 818-21 (2d Cir. 1997) (same). Furthermore, the State has shown its intent to reprosecute by its opposition to petitioner's proposed judgment order.

¶ 11. Under such circumstances, the mechanics by which the charge is reinitiated poses a purely academic question. If there was error, it was harmless. See *Bounds*, 985 F.2d at 192 ("We hold that in the unique circumstances of this case, the government's failure to move to reinstate the dismissed charges was harmless error. . . . We caution that the government that a case may well arise where the failure to reinstate dismissed charges does prejudice the defendant."); cf. *United States v. Dusenbery*, No. 94-3804, 1996 WL 306517, at *5 (6th Cir. June 6, 1996) (finding it "irrelevant" that the government failed to reinstate charges dismissed in a plea agreement after the guilty plea was withdrawn because the defendant was not ultimately harmed by the failure).

*Affirmed.*

Motion for reargument denied January 31, 2012.