2013 VT 78

## In re R.M., R.M. and C.M., Juveniles

[82 A.3d 565]

No. 13-086

Present: Reiber, C.J., Dooley, Skoglund, Burgess and Robinson, JJ.

Opinion Filed August 30, 2013

*Michael Rose*, St. Albans, for Appellant.

*Kristin G. Wood*, Washington County Deputy State's Attorney, Barre, for Appellee State.

*Matthew F. Valerio*, Defender General, and *Rebecca Turner*, Appellate Defender, Montpelier, for Appellee Juveniles.

¶ 1. **Dooley, J.** Following a permanency review hearing, the superior court, family division amended its initial disposition order from a goal of reunification to a concurrent plan for either reunification or adoption. Mother appealed, claiming that the court erred in modifying the disposition order and finding that a reasonable period of time for her to complete needed services under the new plan was six months. While the appeal was pending, we requested supplemental briefing on whether the order in question is an appealable final order. We now conclude that it is and affirm the judgment.

¶ 2. The three children involved in this appeal, R.M., R.M. and C.M., have been the subject of various juvenile proceedings since 2004, when they lived with their parents in the City of Winooski. CHINS petitions were filed in 2009 alleging neglect based on habitual truancy. While the petitions were pending, mother moved with the children to Pennsylvania, and the matter was placed on inactive status. Father later moved to New York, and has since maintained limited contact with the children.

¶ 3. In August 2011, mother sent the children back to Vermont to live with her older son in Winooski while she remained in Pennsylvania. This followed an investigation in Pennsylvania which disclosed that the family was being evicted from their apartment and that the family home was replete with dirty laundry, garbage, spoiled food, and insects. In September 2011, DCF became aware of the children's return to Vermont and took them into custody. They were later placed in foster care, where they have since remained. Mother and father stipulated to an adjudication of CHINS in February 2012.

¶ 4. Following a disposition hearing in April 2012, the court issued a written order adopting the case plan goal of reunification together with the requirements that mother obtain adequate

housing and maintain it in a safe and sanitary condition, maintain consistent and successful visitation, engage in parent-education services, and participate in mental health counseling. In October 2012, however, DCF filed a follow-up case plan recommending that the goal be amended to a concurrent one of reunification or adoption. The court held an evidentiary hearing in January 2013 and issued a written decision shortly thereafter in which it "adopt[ed] the proposed amendments to the case plan based on changed circumstances in the best interest of the children." The court found in this regard that mother had "not made substantial progress toward the goal of obtaining safe and appropriate housing," that her progress in mental health treatment was uncertain, and that additional parenting education was needed. Thus, the court found that, after eighteen months in DCF custody, "the children are [still] not able to go home to mother's care today, nor is that likely to happen in the immediate future." "The slow pace of [mother's] progress and the children's need for permanency," the court further concluded, represented a substantial change of circumstances, and determined that "a modification of the disposition order to reflect a concurrent plan [was] now in the best interest of the children." The court explained that while it was not "abandoning reunification" as the primary goal, "concurrent planning [would] enable DCF to prepare for an alternative should [mother] become unable to complete needed services within a reasonable period of time," which it projected as "six more months." Mother has appealed from this decision.[1]

¶ 5. As noted, a threshold issue is whether the trial court decision modifying the initial disposition order is appealable under the statutory scheme governing permanency proceedings. Under that scheme, once a child has been adjudicated CHINS, DCF is required to file a disposition case plan which must include: a permanency goal; assessments of the child's needs, living situation, and family circumstances; a recommendation with respect to custody; and a plan of services to achieve the permanency goal. 33 V.S.A. § 5316(b). The trial court must then conduct a disposition hearing and issue an order "related to legal custody . . . as the court determines are in the best interest of the child." *Id.*

---

[1] Father has not joined in this appeal. He appeared by telephone and was represented by counsel. He opposed reunification of the children with the mother and urged that the children remain in foster care.

§ 5318(a). If the order provides for a transfer of custody with a goal of reunification, the court is directed to schedule "regular review hearings to evaluate progress," *id.* § 5318(a)(2), the first to occur within 60 days of the disposition order, *id.* § 5320. Where custody is transferred to the Commissioner of the Department for Children and Families, pursuant to § 5318(a)(4), the disposition order is also "subject to periodic review at a permanency hearing." *Id.* § 5321(a).

¶ 6. The disposition order is the foundation for the various review proceedings. It is "a *final order* which may only be modified based on the stipulation of the parties or pursuant to a motion to modify brought under section 5113 of this title." *Id.* § 5318(d) (emphasis added). The latter provision authorizes the trial court — after notice and a hearing — to amend, modify, set aside or vacate an order "on the grounds that a change in circumstances requires such action to serve the best interests of the child." *Id.* § 5113(b).

¶ 7. ■ We do not read the various avenues for review of the circumstances and expectations of the parents and children to create independent opportunities to modify a disposition order without a showing of changed circumstances under § 5113(b). Instead they reflect that circumstances must change within relatively short periods of time to reflect the goals of the case plan and achieve permanency for the children. Thus, one result of a permanency hearing is to produce an estimate of when the permanency goal will be achieved. *Id.* § 5321(a). The court recognized the standard in this case and, where the result of the permanency hearing was to modify the disposition order, the court found that the modification was based on changed circumstances as defined in § 5113(b).[2] This new order — with its modified permanency goal, parental requirements, and timeframes — essentially replaced the original disposition order.

¶ 8. ■ ■ Because a disposition order is a "final order," *id.* § 5318(d), and thus meets the standard for an appealable order, see *In re Burlington Bagel Bakery, Inc.*, 150 Vt. 20, 21, 549 A.2d 1044, 1045 (1988) (to be final and appealable, an order must "end litigation on the merits or conclusively determine the rights of the

---

[2] Mother has not argued that the circumstances were not changed. Changed circumstances were clearly present because the original time expectation for reunification, approved in the disposition order, had passed without reunification.

parties, leaving nothing for the court to do but execute the judgment" (quotation omitted)), the parties can appeal a disposition order whether original or as a result of modification. Because the order mother has appealed is an amended disposition order, we have jurisdiction over the appeal. Although we have not previously considered the issue, we note that this conclusion is consistent with a number of our prior decisions. See, e.g., *In re D.G.*, 2006 VT 60, ¶¶ 1-4, 180 Vt. 577, 904 A.2d 1206 (mem.) (affirming permanency planning order modifying custody from DCF to child's aunt and uncle and holding that evidence supported finding of changed circumstances); *In re A.G.*, 2004 VT 125, ¶¶ 16-27, 178 Vt. 7, 868 A.2d 692 (affirming decision modifying permanency goal from reunification to long-term foster care and concluding that evidence supported finding of changed circumstances); *In re L.S.*, 172 Vt. 549, 549-50, 772 A.2d 1077, 1078 (2001) (mem.) (appeal from order modifying initial disposition goal from reunification to long-term foster care); cf. *Titus v. Titus*, 128 Vt. 444, 444, 266 A.2d 432, 433 (1970) (order modifying a divorce decree is a final judgment that can be appealed).

¶ 9. Turning to the merits, mother's sole claim is that the trial court erred in finding six months to be a reasonable period of time to achieve the permanency goal of reunification. She contends the finding was factually unsupported, and that its effect was to improperly "predetermine" issues that may arise in a future termination proceeding, such as the "future date on which changed circumstances will be deemed to have occurred" and whether a "reasonable period of time" to resume parental responsibilities has expired. The DCF case plan presented to the court for disposition is required to include "a permanency goal and an estimated date for achieving the permanency goal." 33 V.S.A. § 5316(b)(1). DCF complied with this requirement, and the court approved the case plan. The estimated date had expired when DCF sought a new permanency hearing to establish a new order. Again, at the permanency hearing, the court was required to establish a new "estimated time for achieving that goal." *Id.* § 5321(a). The court did so by setting a new six-month period for the children to achieve permanency.

¶ 10. ■ The court's order was fully supported by the record. The court went back to the four requirements mother had to meet to achieve reunification and evaluated her progress as to each. The first was to obtain safe and appropriate housing. The court found

little or no progress on this requirement. Mother remained unemployed and was living with an adult son in a small apartment in Pennsylvania that she acknowledged was insufficient to accommodate the children. Mother suggested that the children could live with her brother, who lives nearby, and the court ordered a home study of this potential residence.

¶ 11. The second was to maintain consistent and successful visitation. Mother's visits with the children had become more regular, but her last visitation had gone poorly because she had slapped and hit her son and brought an· adult son, who had been substantiated for sexual abuse of mother's daughter, to the visitation. The court found that mother continued to show a "lack of insight" and "underscore[d] the need for [mother] to have further parent education." Parent education was also a requirement of the disposition order. Mother had participated in some parental education services, but the court found that additional services were necessary. Finally the disposition order required that mother obtain mental health treatment. The court found that mother had obtained treatment but was unwilling to find, because of lack of evidence other than mother's self-report, that mother had made any progress as a result of the treatment she had received.

¶ 12. As for the children, the court found that, although they had adjusted well to their foster home, they had "many unresolved issues" and were not performing to their potential, and it was "critical that any future move be the[ir] last move."

¶ 13. Mother has challenged none of these specific findings, which together amply support the trial court's conclusion that six months was a reasonable period of time to achieve reunification, given the relatively slow pace of mother's progress and the children's need for permanency. See *In re R.W.*, 2011 VT 124, ¶ 15, 191 Vt. 108, 39 A.3d 682 (on appeal we will affirm trial court's findings unless clearly erroneous and its conclusions if reasonably supported by findings).

¶ 14. ■ ■ The superior court's finding that an additional six months appeared to be a reasonable period of time for mother to accomplish the necessary steps for reunification was simply that, an estimate based on her past performance, progress to date, and the children's continued need for permanency. Mother's main concern is that specification of the six-month period will make

termination of parental rights automatic if the period is not met. See 33 V.S.A. § 5114(a)(3) (factor in determining best interests of a child where termination of parental rights is sought is the "likelihood that the parent will be able to resume or assume parental duties within a reasonable period of time"). We do not believe a specific estimate of the time necessary to achieve permanency has the binding effect that mother fears. If the State seeks to terminate her rights, mother is not foreclosed from challenging the time-period as unreasonable in hindsight, and the trial court must determine independently based on the evidence before it whether the State has carried its burden of proving that a substantial change in material circumstances has occurred and that there is no likelihood of mother resuming her parental responsibilities within a reasonable period of time. See *In re R.W.*, 2011 VT 124, ¶ 15 (reaffirming principle that State has burden of proof at both stages of termination-of-parental-rights proceeding). At the same time, we note that it is clearly the intent of the permanency planning aspects of the juvenile statutes that parents be given expectancies of time necessary to achieve child permanency, and the parents' performance with respect to those expectancies is a factor for the court to consider if the case moves to termination of parental rights. Accordingly, we find no basis to disturb the judgment.

*Affirmed.*