NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2023 VT 17

No. 22-AP-271

| | |
|---|---|
| In re Z.P., Juvenile | Supreme Court |
| | On Appeal from<br>Superior Court, Windham Unit,<br>Family Division |
| | February Term, 2023 |

Elizabeth D. Mann, J.

Sarah Star, Middlebury, for Appellant Mother.

Evan Meenan, Deputy State's Attorney, Montpelier, for Appellee State, and Allison N. Fulcher
  of Martin Delaney & Ricci Law Group, Barre, for Appellee Father.


PRESENT: Reiber, C.J., Eaton, Carroll, Cohen and Waples, JJ.


¶ 1. **WAPLES, J.** Mother appeals the family division's order transferring custody of thirteen-year-old Z.P. to father, who was previously the noncustodial parent. We affirm.

¶ 2. This is mother's second appeal in this juvenile proceeding. In August 2020, Z.P., who was then eleven years old, was taken into emergency custody by the Department for Children and Families (DCF) after an incident involving police during which mother appeared to be having a mental breakdown. The family division found Z.P. was a child in need of care or supervision (CHINS) and approved a case plan with a goal of reunification with mother, who had been the sole custodial parent. This Court affirmed the merits and disposition orders in September 2021. See In re Z.P., No. 2021-114, 2021 WL 4343005 (Vt. Sep. 23, 2021) (unpub. mem.). The facts

supporting the CHINS merits decision are addressed in detail in our September 2021 decision and we therefore do not repeat them here.

¶ 3. In February 2021, DCF placed Z.P. with his maternal grandmother. In November 2021, DCF determined that it could not fully license grandmother as a foster parent and indicated that it planned to move Z.P. to a different placement. Z.P. and mother moved jointly for a conditional custody order (CCO) transferring custody to grandmother. The State opposed the request. After a hearing, the family division granted the motion in December 2021, but stated that this was a "close call" and indicated that it would reconsider its decision if grandmother failed to work with DCF to exercise protective supervision of Z.P.

¶ 4. In April 2022, the State requested that the court discharge custody of Z.P. to father upon expiration of the CCO pursuant to 33 V.S.A. § 5320a(b)(1)(A).[1] The court held a hearing on the motion over four days in June and July 2022. Grandmother continued to have legal custody over Z.P. until the June 28 hearing, at which the family division vacated the CCO and placed Z.P. back in DCF custody. The court explained that "there d[id] not appear to be any other way to

---

[1] Section 5320a(b) of Title 33, entitled "Custody orders to nonparents," provides:

(1) When the court at disposition issues an order continuing or transferring legal custody with a nonparent pursuant to subdivision 5318(a)(2) or (a)(7) of this title, the court shall set the matter for a hearing six months from the date of disposition or custody order, whichever occurs later. At the hearing, the court shall determine whether it is in the best interests of the child to:
(A) transfer either full or conditional custody of the child to a parent;
(B) establish a permanent guardianship pursuant to 14 V.S.A. § 2664 with the nonparent who has had custody of the child as the guardian; or
(C) terminate residual parental rights and release the child for adoption.
(2) If, after hearing, the court determines that reasonable progress has been made toward reunification and that reunification is in the best interests of the child but will require additional time, the court may extend the current order for a period not to exceed six months and set the matter for further hearing.

ensure that Z.P. will have full access to prescribed medications pending conclusion of the on-going hearing and issuance of a decision."

¶ 5.    At the conclusion of the hearing on July 7, 2022, the court made the following oral findings. Mother had failed to address DCF's concerns or follow the recommendations stated in the case plan. She believed she did not require any mental health services. She did not follow the recommendations given to her upon discharge from the Vermont Psychiatric Care Hospital and did not execute releases to allow DCF to communicate with her mental health providers. She also failed to provide any information regarding her housing or financial arrangements, although she regularly reported that she had no income. Mother had not cooperated with DCF and appeared unlikely to do so in future. She had not provided urinalysis samples when requested by DCF, engaged in a substance abuse evaluation or counseling, taken a parenting class, or participated in medical or school appointments for Z.P. during the pendency of the case. She was unperturbed when a DCF worker visited grandmother's home to check on Z.P. and he could not be located, asserting that this was normal teenage behavior. The court noted that mother and grandmother both took the same approach to parenting, and that grandmother left Z.P. unattended for over twelve hours a day while she was at work. The court found that mother had not gained insight into the issues that led to Z.P. entering custody and was uninterested in doing so. It concluded that she had failed to make progress as measured by the case plan and had not demonstrated an ability to care for Z.P. overnight, let alone full-time under a CCO.

¶ 6.    By contrast, the court found that father had demonstrated the ability to parent Z.P. on a full-time basis. The court found that father's relationship with Z.P. had previously been restricted by mother's very hostile temperament. Over the course of the case, father had shown that he was committed to caring for Z.P. and was able to do so. Z.P. was accepted in father's home and had become active and engaged with father's family. Father had made necessary arrangements for Z.P. to receive medical and dental care and schooling in Massachusetts, where he lived, and

3

had a plan for Z.P.'s care when father was traveling for work. Father had also indicated his willingness to encourage Z.P.'s relationship with mother.

¶ 7. The court concluded that it was discharging custody to father immediately, subject to ongoing parent-child contact with mother. It ordered the parties to work together to create a parent-child contact schedule and directed father's counsel to draft an order to be entered in the juvenile proceeding and the related parentage action. On July 11, 2022, the court issued a written order vacating its June 28, 2022, order and transferring custody to father without conditions.[2] The parties subsequently submitted a stipulated parental-rights-and-responsibilities order, which the court issued in both the CHINS and domestic dockets on September 14, 2022. That order stated that physical and legal custody had been discharged to father in the July 11 order and provided for parent-child contact between mother and Z.P. Mother filed a notice of appeal on October 12, 2022.

¶ 8. As a threshold matter, we must address the State's argument that this Court lacks jurisdiction to review the July 2022 order discharging custody to father because mother filed her notice of appeal more than three months after it was issued. See V.R.A.P. 4(a)(1) (requiring notice of appeal to be filed "within 30 days after entry of the judgment or order appealed from"); Casella Constr., Inc. v. Dep't of Taxes, 2005 VT 18, ¶ 3, 178 Vt. 61, 869 A.2d 157 ("The timely filing of a notice of appeal is a jurisdictional requirement."). The July 2022 order transferred legal custody to father without conditions or supervision and was arguably a final appealable disposition order. See In re R.M., 2013 VT 78, ¶ 8, 194 Vt. 431, 82 A.3d 565 (explaining that initial or amended disposition order in CHINS case is final appealable order); 33 V.S.A. § 5318(d) ("A disposition order is a final order . . . ."). However, the family division confused matters by asking the parties

_____

[2] The July 11 order indicates that it was signed by the judge on July 8. However, the document is date-stamped July 11, 2022, and the court's electronic case-management system also indicates that the order was entered on the docket on July 11, making that the operative date for calculating the appeal period. See V.R.A.P. 4(e)(1) (stating order is entered for purposes of Rule 4(a) when it is entered in docket).

4

to submit proposed orders on parent-child contact, indicating that it did not intend the July 2022 order to be the final disposition order. As mother notes, 33 V.S.A. § 5103(d) provides that "[i]f the child is not subject to another juvenile proceeding, jurisdiction shall terminate automatically . . . upon an order of the court transferring legal custody to a parent, guardian, or custodian without conditions or protective supervision." If the family division intended its July 2022 order to be the final word on custody, its jurisdiction would have automatically ended on that date, and it would have lacked authority to issue the parent-child contact order. It is plain from the record that neither the parties nor the court viewed the July 2022 order as the final order closing the case, as no one objected to the subsequent procedure followed by the court and it was not until after the September 2022 order that the court told Z.P.'s guardian ad litem that the case was closed. Under these circumstances, we conclude that the September 2022 order was the intended "final order" because that order conclusively addressed all components of custody and closed the case. See In re Burlington Bagel Bakery, Inc., 150 Vt. 20, 21, 549 A.2d 1044, 1045 (1988) ("To be final and appealable an order must end litigation on the merits or conclusively determine the rights of the parties, leaving nothing for the court to do but execute the judgment." (quotation omitted)). Because mother's appeal from that order was timely, we have jurisdiction to consider both orders.[3]

¶ 9.     We therefore turn to the merits of mother's appeal. Mother contends that the order discharging custody to Z.P. must be reversed because the court failed to make an express finding of changed circumstances or analyze the best-interests factors under 33 V.S.A. § 5114. Mother argues that the operative disposition order at the time the court issued its decision was the original

---

[3] The procedure followed by the family division led to unnecessary confusion in this appeal. A better approach would have been to issue the order discharging custody, close the CHINS case, and refer the issue of parent-child contact to the parentage docket. Alternatively, the court could have expressly stated in the July 11 order that it would not become final until parent-child contact was resolved.

2021 disposition order. To grant the State's motion and discharge custody to father, she argues, the court was required to find changed circumstances and assess the child's best interests.

¶ 10. We agree that the order discharging custody to father constituted a modification of the existing disposition order, such that the court was required to find changed circumstances and assess Z.P.'s best interests. We nevertheless affirm because we conclude that the court's findings sufficiently addressed the statutory factors and supported its conclusion.

¶ 11. At the time the State filed its motion to discharge custody to father, and at the time the hearing began, Z.P. was in the conditional custody of his grandmother. The State therefore sought to transfer full custody to father using the procedure set forth in the CCO statute. See 33 V.S.A. § 5320a(b) (listing permissible permanent disposition options when court has issued CCO to nonparent). However, on June 28, the court vacated grandmother's CCO and transferred custody back to DCF. "When a court vacates and sets aside a judgment, that eliminates the judgment and thereby returns the case to its status before the judgment was made." In re Morin, 2011 VT 132, ¶ 7, 191 Vt. 580, 45 A.3d 39 (mem.). The effect of the court's decision to vacate the CCO was to return the matter to the status that existed prior to the CCO—that is, to the initial disposition order, which called for reunification solely with mother. Before it could modify that disposition order, the court first had to determine "that a change in circumstances require[d] such action to serve the best interests of the child." 33 V.S.A. § 5113(b); see also id. § 5318(d) ("A disposition order is a final order that may only be modified based on the stipulation of the parties or pursuant to a motion to modify brought under section 5113 of this title.").

¶ 12. Mother points out that no party filed a motion to modify the existing disposition order based on changed circumstances, and argues that this is a basis for reversal. It is true that the State's April 2022 motion to transfer custody to father did not refer to § 5113(b). This omission was understandable because at the time, the governing order was the CCO to grandmother, and the juvenile-proceedings statute sets forth a different framework for transferring custody when a

6

CCO is in place. See 33 V.S.A. § 5320a(b). Section 5113(b) only became relevant after the court decided, on its own motion, to vacate the CCO. At that point, the court was in the middle of the hearing on the custody issue and had not yet issued a final decision. All parties understood that the State wished to change the existing arrangement and discharge custody to father, and mother had an opportunity to be heard on this issue. Under these circumstances, we do not see the failure to file a new motion under § 5113(b) as fatal to the court's decision.[4] Cf. In re A.W., 2020 VT 34, ¶ 14, 212 Vt. 225, 235 A.3d 518 (reversing termination of parental rights based on parents' stipulations where children did not agree to termination, no party filed motion to modify initial disposition order, and no modification hearing was held).

¶ 13. The court's failure to make an express finding of changed circumstances likewise was not reversible error because the record and the court's findings support a conclusion that changed circumstances existed here. See In re I.B., 2016 VT 70, ¶ 12, 202 Vt. 311, 149 A.3d 160 ("[T]he absence of an express finding of changed circumstances is not reversible error where the court's findings otherwise state facts sufficient to meet the standard." (quotation and ellipsis omitted)); In re D.C., 2012 VT 108, ¶ 16, 193 Vt. 101, 71 A.3d 1191 (affirming termination of parental rights after disposition despite court's failure to make express finding of changed circumstances because changed circumstances were manifest in record). A change in circumstances "is most often found when a parent's ability to care for a child has either stagnated or deteriorated over the passage of time." In re D.S., 2016 VT 130, ¶ 6, 204 Vt. 44, 162 A.3d 1254 (quotation omitted). "Stagnation may be found if the parent has not made the progress expected in the plan of services for the family despite the passage of time." In re D.M., 2004 VT 41, ¶ 5, 176 Vt. 639, 852 A.2d 588 (mem.). The family division in this case found that mother had failed to meaningfully engage with the case plan or work toward addressing the issues that led to Z.P.

---

[4] Moreover, § 5113(b) allows the court to modify an order on its own motion if changed circumstances exist.

entering state custody. During the nearly two years that the case had been pending, mother had not progressed to overnight visits with Z.P., despite several extensions of the timeline for reunification. These and the court's other findings are supported by the record and demonstrate parental stagnation sufficient to justify modification of the initial disposition order.

¶ 14. Once it determines that the threshold change in circumstances exists, the family division must consider the factors set forth in 33 V.S.A. § 5114(a) in deciding whether and how to modify the existing disposition order. See id. (stating that court shall consider statutory best-interests factors at time of modification hearing under § 5113(b)). Although it is preferable for the family division to explicitly address each statutory factor, we will not reverse a decision based on a court's failure to "express its findings concerning the child's best interests 'in the precise language of the statute' so long as it is evident from the court's decision that the relevant factors were considered." In re I.B., 2016 VT 70, ¶ 12 (quoting In re C.L., 151 Vt. 480, 483, 563 A.2d 241, 243 (1989)).

¶ 15. The court's findings are adequate here. The court found that mother had failed to engage in any aspect of the case plan and lacked insight into the reasons Z.P. was in DCF custody. It was unclear whether she had stable housing or any means of financially supporting herself and Z.P. beyond child support. She was unconcerned by the fact that Z.P. was left unsupervised for most of the day while grandmother was at work. She had not attended any school or medical appointments for Z.P. since the case began. Mother had not demonstrated an ability to have overnight visits with Z.P., and the court found that the case had "certainly not progressed to the point of a conditional custody order to mother." In contrast, the court found that father had demonstrated his willingness and ability to meet Z.P.'s needs. Father had arranged for Z.P.'s schooling, medical and dental care, and childcare when father had to travel for work. Z.P. enjoyed spending time with father and had become an active and engaged member of father's family. Father was also willing to encourage Z.P.'s relationship with mother.

¶ 16. The court's findings regarding mother and father, although not phrased in the language of the statute, demonstrate that it considered the relevant statutory factors. In concluding that mother had not made sufficient progress to have overnight visits, let alone a CCO, the court essentially found that mother was not able to resume parental duties within a reasonable time. As we have frequently explained, this is "[t]he critical factor" in the best-interests analysis. In re B.M., 165 Vt. 331, 336, 682 A.2d 477, 480 (1996). The court further found that Z.P. was adjusting well to father's home and community and was close to father's family. In contrast, the court plainly did not believe that mother played a constructive role in Z.P.'s life, as evidenced by its findings regarding mother's lack of insight into the factors leading to DCF involvement, unwillingness to address her own serious issues, and indifference about Z.P. being unsupervised and off on his own for hours at a time. The court's findings show that it considered Z.P.'s best interests and in turn supported its conclusion. We therefore decline to disturb the decision below. See In re C.L., 151 Vt. at 483, 563 A.2d at 244 ("Inasmuch as the children's best interests are of paramount importance in this kind of proceeding, we will not reverse the trial court's disposition on a technicality.").

Affirmed.

FOR THE COURT:

_____
Associate Justice

¶ 17. **EATON, J.**, concurring in part, dissenting in part. I agree with the majority in all aspects except its determination that the trial court's findings concerning Z.P.'s best interests were adequate to address the statutory best-interests factors under 33 V.S.A. § 5114. I would remand for further proceedings on that issue.

9

¶ 18. This case, like many, has been contentious. For a lengthy period, DCF sought to reunify Z.P. with his mother, who had been Z.P.'s sole custodial parent prior to the emergency custody order transferring custody to DCF. Father had been an absent parent during much of the time prior to Z.P. entering DCF custody. Given the procedural posture of this case at the time of the hearing on the State's motion to discharge custody to father at the expiration of the CCO to grandmother, it is not surprising that most of the trial court's findings were directed at mother's progress, or lack thereof, in meeting the case plan goals. The change in circumstances due to stagnation sufficient to modify the disposition order is amply supported by findings orally made by the trial court at the conclusion of the hearing.

¶ 19. DCF's involvement with father was far more limited in time and scope than it was with mother. Both the trial court and the majority fall into a comparison of father's ability to parent with mother's. However, the best interests of the child is not a zero-sum game in a juvenile case. Under a § 5114 analysis, the inadequacies of one parent do not necessarily make another parent suitable. Cf. In re M.B., 162 Vt. 229, 238, 647 A.2d 1001, 1006 (1994) ("Public policy . . . does not dictate that the parent-child bond be maintained regardless of the cost to the child . . . ."). Respectfully, the extensive findings concerning mother's shortcomings and failure to meet the case plan goals do not reduce the trial court's obligation to make adequate findings concerning father, or make custody to him in Z.P.'s best interests.

¶ 20. The result of this focus on mother's shortcomings is that the trial court did not adequately consider whether it is in Z.P.'s best interests to transfer custody to father. To determine whether rendering custody to father is in Z.P.'s best interests, the trial court was required to consider the four factors set forth in § 5114(a). One of those factors is "the child's interaction and interrelationship of the child with . . . any other person who may significantly affect the child's best interests." 33 V.S.A. § 5114(a)(1). It did not give that factor adequate consideration here.

¶ 21. The majority makes no mention that the trial court found that father will be absent due to his work obligations for up to twelve days per month. During that time, Z.P. will be cared for by his stepmother. Despite acknowledging that, due to father's work travel, Z.P. will spend at least one-third of his time in his stepmother's care, the trial court's sole finding concerning Z.P.'s relationship with his stepmother was that she was part of a loving and accepting home. Stepmother never testified before the trial court, and the record reflects that the DCF worker has never met stepmother and apparently talked with her only once on the telephone. Father also testified that stepmother works up to three days per week, which is material to her ability to care for Z.P. while father is away, but is entirely absent from the trial court's findings. Given the frequency and duration of father's absences, I believe the court, in consideration of Z.P.'s best interests under the statutory factors, was obligated to consider Z.P.'s "interaction and interrelationship" with his stepmother, a person who clearly "may significantly affect the child's best interests." Id. § 5114(a)(1).

¶ 22. In In re I.B., we held that a court need not explicitly address each statutory best-interests factor in the precise language of the best-interests statute, so long as it is evident from the decision that the relevant factors were considered. 2016 VT 70, ¶ 12, 202 Vt. 311, 149 A.3d 160. It is not evident from the trial court's findings that the court considered the relationship between Z.P. and his stepmother; indeed there are no findings of any kind concerning that relationship. Once again, the bulk of the trial court findings on Z.P.'s best interests centered on mother's shortcomings. That the home is loving and that Z.P. has been welcomed into it, standing alone, does not address Z.P.'s relationship with his stepmother, who will be caring for Z.P. in father's absence up to twelve days per month. The court made no findings concerning stepmother's ability to act as what amounts to being Z.P.'s primary caregiver for these significant periods of time. We are left to speculate that she is appropriate for that role, which I am not comfortable in doing. While her love for Z.P. may be unquestioned, it does not supplant the need for a fuller

11

consideration of the relationship. See In re M.B., 162 at 236-37, 647 A.2d at 1005 (explaining that father's love for children and desire to care for them did not outweigh evidence that he would not be able to provide appropriate environment within reasonable period, and concluding that record supported termination of father's parental rights under statutory best-interests factors).

¶ 23. Because it is not evident from the findings made by the trial court that it considered Z.P.'s relationship with his stepmother, which is highly relevant, In re I.B. provides no solace. As the majority properly observes, a child's best interests is of "paramount importance" in a juvenile proceeding. In re C.L., 151 Vt. 480, 483, 563 A.2d 241, 244 (1989). While I understand, and fully support, the need for permanency in Z.P.'s life, the statutory best-interest factors are there for a reason; to provide a consistent rubric in this critical aspect of our juvenile laws. See In re J.M., 2015 VT 94, ¶¶ 12-14, 199 Vt. 627, 127 A.3d 921 (observing that juvenile court's primary concern is "to protect the welfare of the child," therefore, "few, if any, circumstances concerning the welfare of the child should be considered entirely immaterial or, for that matter, entirely controlling," and emphasizing that "the best interests of the child[] must be considered in accordance with the four criteria set forth" (quotations omitted)). Where we cannot say the court adequately considered the statutory best-interests factors, as I believe is the case here, a remand to the trial court is necessary for further proceedings to determine Z.P.'s best interests in accordance with § 5114.

¶ 24. Because the trial court did not adequately consider the statutory factors under 15 V.S.A. § 5114, I dissent from that portion of the decision affirming the determination that custody with father is in Z.P.'s best interests.

¶ 25. I am authorized to state that Justice Cohen joins this concurrence and dissent.

_____
Associate Justice

12