*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

SUPREME COURT DOCKET NO. 2013-289

DECEMBER TERM, 2013

| In re J.G. and A.G., Juveniles | } | APPEALED FROM: |
| | } | |
| | } | Superior Court, Caledonia Unit, |
| | } | Family Division |
| | } | |
| | } | DOCKET NOS. 105/106-9-12 & |
| | } | 150-12-12 Cajv |

Trial Judge: M. Kathleen Manley

In the above-entitled cause, the Clerk will enter:

Mother appeals from the family court's disposition orders concerning J.G. and A.G. She argues that the court erred in reaching its decisions. We affirm.

Mother and father are the parents of J.G., A.G., K.G., and Ja.G. In early September 2012, the Department for Children and Families (DCF) received a report that father had physically assaulted K.G., kicking her in the ribs with steel-toed boots as she lay on the floor. Father was criminally charged for this incident and eventually pled guilty to a reduced charge of domestic assault. Father has an alcohol abuse problem and the children reported frequent fighting in the home. Mother told DCF that she did not intend to engage in any services nor did she intend to require the children to do so. Mother asserted that K.G. was lying about the assault, and she saw no reason why father should have to remain out of the home. DCF subsequently filed petitions alleging that the children were in need of care or services (CHINS), and it moved for an emergency conditional custody order, which was granted in September 2012. Pursuant to this order, the children remained in mother's custody subject to certain conditions.

In early October 2012, J.G., who was ten years old at the time, was expelled from school. In mid-December, DCF filed an additional CHINS petition concerning J.G., alleging that mother had not taken the necessary steps to reenroll him in school. In this new petition, DCF asked that J.G. be placed in DCF custody pursuant to an emergency care order. This request was denied in December 2012, and J.G. remained in mother's custody subject to a conditional custody order with new conditions. The court warned mother, however, that unless J.G. was reenrolled in school without delay, it would revisit custody.

In March 2013, parents stipulated that all four children were CHINS. Parents acknowledged that father's alcohol and anger management problems were not being addressed when the CHINS petitions were filed, which created a risk of harm for the children. Parents also stipulated that attempts to enroll J.G. in an educational program through the Blue Mountain Unit had been unsuccessful. The court transferred temporary legal custody of J.G. to DCF pending a

disposition hearing based on mother's failure to abide by the educational requirement and the fact that J.G. was still truant. A.G. remained in mother's custody subject to a conditional custody order as did the other children.

Following a contested disposition hearing in June 2013, the court continued the conditional care order as to A.G. and K.G. and continued J.G. in DCF custody. Ja.G. turned eighteen at the time of the disposition hearing, and his case was closed by DCF. The court recounted the procedural history of the case and made findings on the record. The court explained that, with respect to J.G., this was truly a case of educational neglect. The court found it very clear that mother was more vested in complaining about trivial matters than in trying to support J.G. in his educational needs. Mother repeatedly raised hurdles that had to be overcome before she was even willing to go to a school board meeting concerning J.G.'s reenrollment. After J.G. was removed from the home and enrolled in school with a transitional one-on-one in-school tutoring program, he made more progress in three months than he had in the prior year. He was now in a regular school setting instead of at home playing videogames. The court noted that J.G. had been seeing a medical professional who opined that it would not be productive to have J.G. return home until mother started to consider J.G.'s needs. The court saw little if any evidence that mother understood J.G.'s needs. The court also explained that mother's visits with J.G. had been curtailed based on her inappropriate behavior and J.G.'s escalating behavior following such visits. The court found that mother needed to be able to interact appropriately with J.G., that is, not talk to him about the case, and not rail against DCF, the court, the school, and others.

The court also found that, as a general matter, parents had exhibited a complete lack of follow-through. They took no action unless there was a court order in place, and even then, parents sometimes failed to comply. J.G. was now getting stabilized and the court found it important that he be allowed to continue this process so that when he returned home, things would go well. The court found that parents had more work to do to ensure that J.G. would feel safe at home and that he would continue to go to school. The court thus concluded that it was in J.G.'s best interests to remain in DCF custody.

As indicated, the court also found it appropriate to continue the conditional custody order with respect to A.G. Given the assault on K.G., the court found it reasonable to assume that A.G. was at risk of harm and would benefit from the services being offered to the family. The court expressed its concern about the dynamic within the home and the effect that exposure to violence and substance abuse had on the children. The court found that parents needed to recognize that the children were damaged and that they needed support, and parents needed to find a more effective way to communicate. The court recounted that mother was very angry and vested in "fighting the system." This made it difficult for DCF to provide mother with effective services and ensure that the children were safe. For these and other reasons, the court adopted DCF's proposed disposition plans with respect to A.G. and J.G. Mother appealed from the court's order.

Mother argues that the court's disposition orders interfere with the family to a greater degree than justified. Mother seizes on a statement by the court that it could not understand the "dynamic of [J.G.]." She argues that this statement reflects the court's recognition that it lacked adequate evidence about mother's "agenda." Mother also asserts that the court committed clear

2

error in characterizing her disputes with the school district as trivial. She provides her own assessment of the evidence with respect to this issue.

On review, we will affirm the trial court's findings unless clearly erroneous and its conclusions if reasonably supported by findings. See In re R.M, 2013 VT 78, ¶ 13. The court's decision is supported by the record here.

Mother takes the court's statement about the "dynamic" of J.G. out of context. The court was not acknowledging that it lacked sufficient evidence on the educational neglect issue. The court found the evidence on this point very clear. The court was simply expressing its mystification about what might be driving mother's failure to reenroll J.G. in school given that the other children were enrolled in school and receiving a proper education. J.G., by contrast, was at home for six months playing video games all day. The court did not err in making this statement, and the record amply supports a finding that mother was neglecting J.G.'s educational needs. The court's characterization of mother's actions as focused more on process issues and her disputes with the school rather than on supporting J.G.'s needs is similarly supported by the evidence. The record shows that mother repeatedly set conditions before she would move forward with reenrolling J.G. in school. She initially refused to meet with school officials until a no-trespass order against J.G. was "officially removed." She stated that she would not return J.G. to a public school until the school district paid for an educational assessment of J.G. by an independent entity. When the school district agreed and asked mother to sign a release allowing the school to provide materials to the evaluator, and to receive a report therefrom, mother refused. Mother's obstructive behavior continued until March, when J.G. was removed from her custody. While mother argues that her behavior shows that she was concerned with J.G.'s educational welfare, the court found otherwise and acted well within its discretion in doing so. See, e.g., Kanaan v. Kanaan, 163 Vt. 402, 405 (1995) (trial court's findings entitled to wide deference on review because it is in unique position to assess the credibility of witnesses and weigh the evidence presented). The court did not err in its disposition order as to J.G.

Mother also challenges the court's order with respect to A.G. According to mother, the court simply concluded that because K.G. would be subject to a conditional custody order, A.G. "might as well be" too. By doing so, mother asserts that the court overlooked that DCF had the burden of proof, and it failed to assess A.G.'s individual needs. Mother also argues that the court erred in finding that A.G. could be at risk based on father's assault of K.G.

We reject these arguments. The court's decision to continue the conditional care order for A.G. was plainly based on the court's individualized assessment of A.G.'s best interests, and the court applied the appropriate standard of proof in reaching its decision. See 33 V.S.A. § 5318(a) (explaining that "[a]t disposition, the court shall make such orders related to legal custody for a child who has been found to be in need of care and supervision as the court determines are in the best interest of the child"); In re D.C., 2012 VT 108, ¶ 25 ("The standard of proof at the disposition hearing is preponderance of the evidence unless termination of parental rights is sought . . . ."). In reaching its decision, the court expressed its concern about the dynamic of anger and violence within the family home, explaining that family interactions were marked by screaming and breaking things. The court concluded that "there needs to be some recognition by the parents" that the children need support, and that the old ways of communicating could not continue. In particular, the court noted the need for outside support to

3

facilitate better communications and safety in the family.  Mother had taken no steps to address this dynamic within the home and to find more effective ways to communicate.  She had not yet recognized that the children, including A.G., were damaged and needed support.  Mother remained focused on "fighting the system" rather than engaging in services.  Under these circumstances, the court reasonably concluded that allowing A.G. to remain in mother's custody, subject to certain conditions, served A.G.'s best interests.  These conditions include a requirement that mother, A.G., and K.G. participate in appropriate services as recommended by DCF as well as various mechanisms to allow DCF to ensure that the children remain safe in mother's home.  Finally, we note that the court's observation about a risk of possible physical harm to A.G. was expressly made about a risk presented by father, not mother.  Thus, even assuming this statement was error, it was harmless.

Affirmed.

BY THE COURT:

_____
Paul L. Reiber, Chief Justice

_____
Beth Robinson, Associate Justice

_____
Geoffrey W. Crawford, Associate Justice